### JOSIAH ARNOLD *vs.* RICHMOND IRON WORKS.

A deed conveying land, executed by a person of unsound mind, is voidable only, and not void; and in order to avoid it, on being restored to his right mind, he must surrender the price, if paid, or the contract for its payment, if unpaid.

If one, who while of unsound mind has executed a deed conveying land, after being restored to his right mind, and knowing that his grantee is in possession of the land under the deed, does not enter upon the land, nor give notice of his intention to disaffirm the conveyance, but receives payment of the notes for the price given to him while insane, his intention to ratify and confirm the deed may be inferred; although at the time of receiving such payment he does not know that he has the power of avoiding the deed, and that by receiving such payment he will relinquish that power.

MOTION by the defendant for the acceptance of an award of arbitrators, under a submission entered into on the 15th of July 1853, before a justice of the peace, pursuant to Rev. Sts. *c.* 114. The court of common pleas accepted the award, and the plaintiff appealed to this court.

The parties, by certain terms and conditions annexed to the agreement of submission, stipulated that it should include all demands of Arnold " either against the said Richmond Iron Works, or the late firm of Gates, Pettee & Co., for ore taken from certain premises in West Stockbridge and Richmond, known as the Cone Ore Bed and Lane Ore Bed, since April 15th 1853, and whether founded in tort or contract." The fifth article of the terms and conditions of submission was thus: " The arbitrators shall, at the request of either party, reserve any question of law for the determination of the court, and report such facts as may be necessary for a proper understanding of the same."

The arbitrators, after hearing the parties, on the 12th of September 1853 made and returned their award, by which they find " that on the 15th day of April 1843, that being the date of a deed, made by the said Josiah Arnold to the Richmond Iron Works, and under which the defendants claim the right to dig the ore for which the said Arnold claims pay in this case, the said Arnold was insane. And they further find that, subsequent to the said 15th day of April 1843, and when he was of sane

mind, the said Arnold ratified said deed. They therefore award and determine, and this is their final award and determination in the premises, that the plaintiff have and recover of the defendants nothing, and that the defendants recover of the plaintiff the costs of this reference," &c.

The arbitrators afterwards made a supplementary report, in which, after reciting their first report, and that the plaintiff had, in accordance with the fifth article of the agreement of submission, requested them to reserve for the determination of the court " the following question of law, to wit, whether the facts proved in the case amount in law to a ratification of the deed," they report as follows :

" It was proved to our entire satisfaction that the plaintiff was restored to his right mind and became a sane man, some time in the summer or fall of 1843, and we report that therefore as a fact.

" The consideration of the aforesaid deed of April 15th 1843 was $3,000. For the payment of this sum, the Richmond Iron Works gave the following notes, all of which were dated April 15th 1843, namely :" [Then follows a description of four notes, two for $1,000 each, payable to the plaintiff or order, one in ninety days from date, and the second on the 1st of April 1844; and the other two for $500 each, payable to A. Tobey, on the first days of April 1845 and 1846, respectively ; and a specification of the payments of the amount of the first note, in May and October 1843, to third persons, at the plaintiff's request, and of the second note to the plaintiff himself in April and May 1844.] " The two $500 notes were given over, either at the time of their execution or soon after, to A. Tobey, to pay a debt due to him from the plaintiff; and they were both paid to Tobey at maturity, without any agency on the part of the plaintiff therein, and without any objection or interference on his part.

" We do also report, as facts, satisfactorily proved to us, that before any of the aforesaid payments upon the second, third and fourth notes above described were made, and at the time they were made, the plaintiff knew that the defendants were in possession of the ore beds, claiming to hold them under the said deed of April 15th 1843; that he well knew the nature and the

effect of that conveyance; that when he received the payments above specified on the note which fell due in April 1844, he received them, knowing and understanding that they were part of the purchase money given by the defendants for the premises conveyed by the deed aforesaid; and that at the time when the Tobey notes aforesaid fell due, and were paid by the defendants, the plaintiff well knew that his own debt to Tobey had been paid off by these notes of the defendant, and that the last mentioned notes were a part of the consideration of the said deed."

J. *Rockwell*, for the plaintiff, cited *Allis* v. *Billings*, 6 Met. 415; *Seaver* v. *Phelps*, 11 Pick. 304; *Mitchell* v. *Kingman*, 5 Pick. 434; *Harmer* v. *Killing*, 5 Esp. R. 103; Chit. Con. (8th Amer. ed.) 131; Shelford on Lunatics, 255; *Tucker* v. *Moreland*, 10 Pet. 58; *Rogers* v. *Walker*, 6 Barr, 371; *Cumming* v. *Ince*, 11 Ad. & El. N. R. 112; *Baxter* v. *Portsmouth*, 2 Car. & P. 178, 5 B. & C. 170, and 7 Dowl. & Ryl. 614; *Brown* v. *Jodrell*, 3 Car. & P. 30, and Mood. & Malk. 105; Bac. Ab. Idiots & Lunatics, F.; *Faulder* v. *Silk*, 3 Campb. 126; *Sentance* v. *Pool*, 3 Car. & P. 1; *Niell* v. *Morley*, 9 Ves. 478; *Jackson* v. *Todd*, 6 Johns. 257; *Jackson* v. *Carpenter*, 11 Johns. 542; *Jackson* v. *Burchin*, 14 Johns. 124; *Delano* v. *Blake*, 11 Wend. 85; *Dearborn* v. *Eastman*, 4 N. H. 441; *Lawson* v. *Lovejoy*, 8 Greenl. 405; *Benham* v. *Bishop*, 9 Conn. 330; 2 Kent Com. (6th ed.) 238, 239.

I. *Sumner & H. W. Taft*, for the defendants, cited *Allis* v. *Billings*, 6 Met. 415; *Beals* v. *See*, 10 Barr, 56; *Molton* v. *Camroux*, 2 Exchequer Reports, 487, and 4 Exchequer Reports, 17; Chit. Con. (8th Amer. ed.) 134; *Thayer* v. *Turner*, 8 Met. 550; *Roof* v. *Stafford*, 7 Cow. 179; *Hamblett* v. *Hamblett*, 6 N. H 337; *Butler* v. *Hildreth*, 5 Met. 49; *Hubbard* v. *Cummings*, 1 Greenl. 11; *Dana* v. *Coombs*, 6 Greenl. 89; *Lawson* v. *Lovejoy*, 8 Greenl. 405; *Roberts* v. *Wiggin*, 1 N. H. 73; *Bigelow* v. *Kinney*, 3 Verm. 358; *Delano* v. *Blake*, 11 Wend. 85; *Boyden* v. *Boyden*, 9 Met. 519; *Kline* v. *Beebe*, 6 Conn. 494; *Norton* v. *Norton*, 5 Cush. 530; *Kimball* v. *Cunningham*, 4 Mass. 502; *Perley* v. *Balch*, 23 Pick. 283; Story on Agency, §§ 239, 253 & seq.; 2 Kent Com. (6th ed.) 235, 236; *Commonwealth* v. *Rogers*, 7 Met. 500; *Hallett* v. *Oakes*, 1 Cush. 296.

Arnold *v.* Richmond Iron Works.

SHAW, C. J.   The present case is so like the recent case of *Allis* v. *Billings*, 6 Met. 415, in all its essential features, that it seems hardly necessary to do more than cite that case.   It was there held that when a deed conveying land had been duly signed, sealed, delivered and acknowledged, and placed in a condition to be put on record, by one of unsound mind, and cash and notes had been given by the grantee in security and satisfaction for the price, such deed was voidable and not void; and that if afterwards, and after the grantor was restored to his right mind, he did acts deliberately, manifesting an intention to ratify and confirm the transaction of sale and conveyance, he could not afterwards avoid that deed, by alleging that he was insane when he made it.   Such a deed, to many purposes, is equivalent to a feoffment with livery of seizin; and we believe it has long been held, by the rules of the common law, that such a feoffment would pass a seizin *de facto*, and vest the estate in the feoffee, subject to be avoided by matter of record, entry, or by some of the modes allowed by law for avoiding and annulling the effect of such a conveyance.   To this extent, the rule would seem to be founded on the plainest principles of justice, as well as law.   In such case, the conveyance of an estate by bargain and sale on the one side, and by the payment, or contract for the payment on the other, constitute one entire transaction, mutually conditional and dependent.   It must be affirmed or avoided as a whole.   It cannot be affirmed in part, so as to hold the price, and disaffirmed in part, so as to avoid the conveyance.   *Badger v. Phinney*, 15 Mass. 359.

If then the unfortunate person of unsound mind, coming to the full possession of his mental faculties, desires to relieve himself from a conveyance made during his incapacity, he must restore the price, if paid, or surrender the contract for it, if unpaid. In short, he must place the grantee, in all respects, as far as possible, *in statu quo*.   To that extent, the case of *Allis* v. *Billings* does go, and we think it is well sustained by the authorities cited.   We say nothing here of a bond, covenant or other instrument purely executory, where the obligation arises solely from the act of a disposing mind, binding a person to some

37 *

obligation or duty, and under which no estate or property has passed or been transferred; nor, if such a contract would be void-able and not void, do we consider here what acts, either of record or *in pais*, would be sufficient, on the part of the party contracting, after being restored, to avoid or to confirm such contract. Such a case may depend upon its own peculiar circumstances, to be judged of as they arise. The case of *Allis* v. *Billings* is one where a party, restored to his right mind, having a full *jus disponendi*, and full capacity to judge and act in the conduct of his affairs, finding what had occurred whilst his mind was under a cloud, balancing the advantages to himself of reclaiming his land or holding the price, prefers the latter. By doing this, he necessarily affirms the deed, by which he in terms alienated his land.

In the very full argument offered by the counsel for the plaintiff in this case, it was suggested, rather than distinctly proposed to the court, to revise the case relied on, on the ground that there were authorities, deserving of consideration, leading to a contrary result. Undoubtedly there have been various views taken of this difficult subject, and there may be some discrepancy in the cases, especially whilst the maxim prevailed, that no man could stultify himself, or in other words, could plead his own insanity to avoid his acts and contracts; a maxim founded mainly on considerations of policy, from the danger that men might feign past insanity, and be tempted to procure false testimony to establish it, in order to avoid and annul their solemn obligations and contracts. But on a reëxamination of the authorities, we see nothing to raise a doubt that the law, as it now stands, is correctly declared in that case.

It was urged that the terms "void and voidable," as applied to the deed of a person *non compos*, do not express the true distinction, but that there may be an intermediate class of deeds confirmable, that is, deeds made by one having no capacity to contract, and so void until confirmed by the party after being restored. To say nothing of the practical inconvenience of making the operation of a deed to transfer an estate depend on some act, done months, perhaps years after it has been delivered

and recorded, some acceptance of payment, or other act *in pais* passing between the parties without record or other means of notoriety; it would afford no more means of security to the rights of the party under disability, than the power of refusing to ratify and actually disaffirming the deed, when the powers of his mind and his disposing capacity are fully restored. We are therefore of opinion that the referees decided correctly in holding that the deed of the plaintiff, made whilst in an unsound state of mind, was voidable, and not absolutely void, and as a necessary legal consequence, that it was capable of being ratified and confirmed by him, after his mind was restored.

Perhaps our duty would properly stop here, the above being apparently the only question of law raised by the report, and the subsequent question of actual ratification of the conveyance by the plaintiff being a question of fact for the referees. The weight of the evidence is no doubt a question of fact; the argument perhaps raises a question of law upon its competency, and as such we may consider it.

The acts necessary to be done, to affirm and ratify a prior voidable act, or to annul it and set it aside, may be various, according to the nature of the act to be thus affirmed or disaffirmed, and to the condition and capacity of the party doing the act. In *Tucker* v. *Moreland*, 10 Pet. 58, it was held that in the analogous case of an infant, he might avoid his act, deed or contract, by different means, according to the nature of the act or the circumstances of the case. One of the cases put is, where an infant makes a lease; the receipt of rent, after he comes of age, is a ratification. Bac. Ab. Infancy & Age, I. 8.

In the present case, after the plaintiff was restored to the full possession of his reason, he found that he had executed a conveyance of his estate, that the defendants were in possession under his deed; also, that he held certain notes for part of the purchase money. His forbearing to enter, his giving no notice of his election to disaffirm the conveyance, would be negative acts, and perhaps equivocal; but his demanding and receiving payment of the notes was affirmative, significant and decisive. It was inconsistent with any just purpose to disaffirm the con

veyance. Payment and acceptance of the compensation are decisive of an election to affirm. *Butler* v. *Hildreth,* 5 Met. 49 *Norton* v. *Norton,* 5 Cush. 530. The defendants had no election to avoid the conveyance; they were bound to pay their notes to the plaintiff on his demand. Had he brought his action on them and obtained judgment, such judgment would have been record evidence of his affirmance of the conveyance. Is actual payment to him less efficacious? In the case of *Norton* v. *Norton,* which respected a conveyance in fraud of creditors by a deceased intestate, where a part of the purchase money had been received by the administrator, it was stated that if payment had been received by the administrator with full knowledge of all the facts, and if the administrator was the party in interest, like the heir, it might have been a ratification.

The only remaining question is, whether these payments were received by the plaintiff with such a knowledge of the facts as to make his acts binding. Upon this point the referees report, that before and at the time of the payments made to the plaintiff himself, in April 1844, he well knew that the defendants were in possession of the ore beds under his said deed; that he well knew the nature and effect of that conveyance; that he received these payments, well knowing and understanding that they were part of the purchase money given by the defendants for the conveyance of the premises to them by his said deed. This, we think, was competent, and we may add, strong evidence from which to infer an intent to ratify. We must bear in mind, in this inquiry, that we are now considering the validity of the act and contract of a sane person, with full power of buying and selling, of judging of his rights and interests and managing his affairs, in doing an act freely and without compulsion or fraud. The law proceeds on the assumption, that every man so situated, acting without fraud or duress, and knowing the facts, upon which such act will operate, is bound by the necessary and legal effects and consequences of such act, and so is bound by his contracts according to their ordinary import and construction. It was argued, that the plaintiff should not be bound in such case of the ratification of a contract, made whilst of unsound

mind, without affirmative proof, that he knew that he had the power of avoiding his deed, and that, by demanding and receiving payment of his notes, he would relinquish that power. This is not tenable, unless a man of sane mind may set up his ignorance of the law, to excuse himself from liability on his contracts. Could a man, who should give a promise in writing to pay a debt of more than six years standing, avoid his acknowledgment and promise, by averring that he did not know that in point of law he had a good bar to the note, on the statute of limitations? It seems to us not. We think the law presumes that every man, of competent capacity to make contracts, either by his knowledge, or by the aid of legal counsel or such other aid and advice as he may avail himself of, knows enough of the law to make valid contracts; and, at all events, the law will not allow such an excuse to exempt him from the obligation of his contracts. The evidence reported being in our opinion competent, and the referees having found it sufficient to establish a ratification, the award, we think, was right, upon both grounds.

*Judgment on the award.*