WALLACE v. JONES et al.

1. The evidence showing beyond all controversy that the parties on both sides claimed under Thomas L. Wilcox, the plaintiffs by a certain consent decree alone, and the defendant by the same decree as a link in one chain of his title and by a sheriff's sale as a link in the other chain, there was no error in treating the possession of Thomas L. Wilcox, prior both to the decree and the sheriff's sale, as available to the plaintiffs in founding their *prima facie* right to recover. Nor was there any error in making the comparative strength of the plaintiffs' title and the defendant's title the ultimate test of whether there should be a recovery or not. If the title of Thomas L. Wilcox in its complete integrity passed into the defendant, whether through the sheriff's sale or through the guardian's sale, the plaintiffs could not recover. If the sheriff's sale was defeated as a means of passing title by reason of four years possession by the tenant for life under the decree, during which there was no legal obstacle to enforcing the levy, and if the guardian's sale was defeated as a means of passing title by reason of notice in the defendant that the guardian himself was in fact the purchaser at his own sale, then the plaintiffs could recover.

2. Where minors, pending a bill filed by other persons, were made parties plaintiff by amendment, a next friend representing them, there was no need to serve them with a copy of the bill; and where a decree in their favor was taken at the first term, the decree purporting on its face to have been taken at that term by consent of parties, there was no irregularity, much less any absolute invalidity.

3. Where letters appear in the transcript of a record, the record being of a case in which there was a consent decree rendered many years ago, and the letters apparently have some relevancy to the fact of consent, they may be treated as a part of the record and be received in evidence accordingly.

4. Where a man, his wife and their minor children, the children being represented by a next friend, were coplaintiffs in a bill which was disposed of by a consent decree, and that decree declared that certain premises, previously the property of the husband and father, should belong to the wife for her life and to the children in remainder, this was in effect a conveyance by the husband and father; and if the wife and children, in and by the same decree, parted with other premises which previously belonged to them, and these premises thereby became the property of the father and his children by a former marriage, the wife and her children were purchasers for value from the husband and

father. Possession by the tenant for life under the decree for four years would inure to the benefit of the remaindermen as against the lien of an existing judgment against the husband and father.

5. A purchase by a guardian at his own sale, where the sale is otherwise legal, is not void, but is voidable only at the election of the wards. A guardian may sell a vested remainder under an order granting leave to sell the land, his ward having no estate in the land except the remainder so sold.

6. Where one of the theories involved in the case on trial is that a guardian was the real purchaser at his own sale, although he conveyed by deed to another, and it appears that the other afterwards conveyed to a brother of the guardian nominally for a consideration but without any in fact, evidence that the brother, on selling and conveying the property to the party whose title is now attacked by the wards, paid a part of the purchase money received by him over to the guardian, is admissible without showing that the brother's vendee, the party from whom this purchase money came, had notice that the guardian had any interest in it or that it was received for his benefit. The sole relevancy of the evidence, however, would be in its tendency to show that the guardian was the real purchaser at his own sale, and that both his nominal vendee and his brother co-operated with him in abusing the guardianship and thus made themselves trustees for the wards.

7. Where the value of the land in controversy in a given year is relevant, its value for some years immediately before and after may be relevant as tending to show what the value was in the given year.

8. Inadequacy of price alone, where the price named in the conveyance purports to be a substantial amount, such as two hundred dollars for the remainder in one half of a tract of land lying in a remote county from the one in which the sale took place, is not evidence from which it could rightly be inferred that a subsequent purchaser for value had notice that the guardian making the sale, and who conveyed to another person, was himself the real purchaser at that sale, and that the person to whom he conveyed acted for him in making the purchase.

9. There being no evidence that the defendant knew anything of the condition of the mind of the plaintiffs' mother in the interval from 1877 to 1889, evidence that she was of unsound mind during the whole or a part of that interval was not admissible to charge him with notice of anything; but it was admissible to affect him on the question as to whether the occupant of the land continued to be her tenant after she executed the deed of April 3d, 1878, since it would bear on the question of her sanity when that deed was executed; and if she was then insane, her grantee in that deed, he being a volunteer, would hold in trust for her, and the

occupant of the land would be thereafter in possession under her the same as he was before the deed was made.

10. If the title passed by the sheriff's sale, the immediate purchaser at that sale being then, as to the premises sold, a trustee for the children, he acquired as against them only a voidable title. But as the money which he advanced to purchase the execution, or to purchase the land under it, went to disencumber the title of the children, whether, in order to take the benefit of that sale and avoid it as passing title to their trustee for his own purposes, they would not have to refund the amount advanced, with interest, *quære?* And, some of the children being still minors, whether an election could be made for them except by a court exercising equity powers, *quære?*

11. There being no evidence tending to show that the defendant in *fi. fa.* became the owner of the *fi. fa.* before the sheriff's sale under it took place, or was the owner, legal or equitable, when that sale did take place, it was error to charge the jury anything whatever touching such ownership.

12. The possession of a tenant for life, or of any one holding under or for such tenant, cannot operate as notice to a purchaser of the estate in remainder of any defect in the title of his immediate vendor to the remainder interest, although he may not purchase the remainder separately but the whole fee, his vendor having a conveyance which covers in the same deed both the estate for life and the remainder. Remaindermen as such are not entitled to possession and cannot have it in their own right until after the death of the tenant for life.

13. There was no error in charging the jury in substance thus: The right of action did not accrue to these minors, and they had no right to sue until their mother died. On the death of their mother the right of possession was cast on them; the life-estate by the decree was in her. There is no limitation running against either of them if you believe from the evidence that the mother did not die until 1889; because that is only four years ago, and in order for limitation to run against one as to title to land, it must be at least seven years; and the statute does not run against minors until they become of age and seven years thereafter. So, if you believe that the ages of these children were as represented by the testimony, there would be no bar by lapse of time upon their right of recovery. *Judgment reversed.*

January 27, 1894.

Complaint for land. Before Judge RICHARD H. CLARK. DeKalb superior court. February term, 1893.

On September 25, 1890, Mary A. Jones and Robert Wilcox, and Susan and Jackson Wilcox by their next

friend, all being children of Thomas L. and Nancy E.
Wilcox, brought complaint against John F. Wallace for
the west half of land lot 106 in the 18th district of
DeKalb county.   There was a verdict for plaintiffs, and
defendant's motion for new trial was overruled.

It appeared upon the trial that in October, 1868, one
Bass deeded to Thomas L. Wilcox the undivided half of
1,225 acres of land in the 18th district of DeKalb county,
including the east half of lot 106 and 130 acres of lots
106 and 57.   The *habendum* was to Wilcox, his heirs
and assigns, in trust for the sole support and use of
Nancy Wilcox his wife, her heirs and assigns, free from
the debts and liabilities of said Thomas L., with power
to Nancy to empower Thomas L., by writing under her
hand and seal, to sell and convey any part or the whole
of said trust estate and reinvest the proceeds in such
other property, subject to said trust, as he should deem
most for the interest of the estate, at any time and
without any order of court.   In November, 1869, an
agreement for partition was made by one Harris, trustee
of his wife, owner of the other undivided interest, and
Wilcox, trustee of his wife, by which and the deeds of
Harris and his wife to Wilcox, trustee for his wife, there
was conveyed to Wilcox, trustee, the whole of lots 106
and 109 in the 18th district.   In September, 1870, Mrs.
Wilcox by her next friend brought her bill against her
husband, alleging that he as trustee held title to the lands
above mentioned and other land, and that he had failed
as husband and trustee to protect and support her and
their children Mary and Robert, and was mismanaging
the estate and was insolvent; and praying for a decree
that he be compelled to make to her or another trustee
title to the property and deliver possession to her, etc.
Under a written agreement made by the parties in April,
1871, a verdict and decree were taken at the March term,
1871, appointing two persons as partitioners to partition

the land described in the bill and make return, and that
when so partitioned the title to the land so divided
should vest in the parties respectively, according. to the
terms of. the agreement, to wit, that the part having on
it the buildings should vest in defendant as a homestead
under the homestead laws of Georgia, for life, and at
his death to go to his children by his first wife, and the
other part to go to and be revested in and continue to be
the property of Mrs. Wilcox to her use for life,.free.from
the debts, etc., of her present or future husband, with
remainder to her children by said defendant. Provi-
sion was also.made for counsel fees, to operate as a lien
in favor of such counsel upon the property assigned to
the parties respectively, etc.. Under this decree the par-
titioners made return from which it appeared, briefly
stated, that they set apart all of lot 106 and forty acres
of the southeast corner of lot 109 to Thomas L. Wilcox,
and the balance of lot 109 to Mrs. Wilcox, under the
agreement.    In September, 1874, this return having
been lost, a copy was entered upon the minutes and
made the judgment of the court.: By bill brought to
the March term, 1875, of DeKalb superior court, Wilcox
and his children by his first wife, suing by him as their
next friend, against L. J. Winn and W. S. Thomson,
alleged the decree and division above mentioned, and
further: Prior to said decree one Cole sued Thomas L.
Wilcox on what was a Confederate contract and what
was not worth more than $100, and Thomas L. was in-
formed by the clerk of the court that judgment would
go against him for not more than the true amount due
in United States currency, and Wilcox being ignorant
relied on this and did not appear, and afterwards learned
that plaintiffs' attorneys, themselves ignorant of the
truth, Cole being absent and not knowing what was
done, entered judgment for the full sum, principal and
interest, on May 3, 1871. Afterwards Cole, not knowing

that judgment had been rendered for this large amount,. transferred the *fi. fa.* to Thomson and Winn for $150. Wilcox is entitled to have the judgment set aside and the excess above what is justly due written off, but. if he is estopped by his laches, the other complainants by their rights, either under the homestead laws. as *cestui que trustent* or otherwise beneficiaries, are not. estopped for any greater amount than the amount Winn and Thomson paid, and though the debt to Cole is older than the homestead laws of 1868, yet. the judgment can be enforced against the homestead rights only for the true amount of the debt. Winn and Thomson are seeking to enforce the *fi. fa.* for the full amount nominally due, against the property set apart under the decree to Wilcox and his children. In September, 1873, one Knott by Winn as his attorney obtained judgment against Wilcox, and *fi. fa.* from this judgment was, on January 30, 1874, levied on lot 109. On Friday before the sale day in April at which the property was. advertised, the levying officer informed Wilcox the sale would be postponed, and for this reason he did not attend the sale. The property levied on was worth $2,000,. greatly in excess of the amount of the *fi. fa.*, which was well known to plaintiff's attorney. Plaintiff himself was absent. Yet the whole lot 109 was exposed to sale and bid off by Thomson and Winn for $95, which was credited on the *fi. fa.* Then they conceived the idea of possessing themselves of all complainants' property,. and hunted up Cole or corresponded with him and bought his *fi. fa.* Afterwards, on July 6, 1874, they caused the Knott *fi. fa.* to be again levied on lot 106, but did not levy the Cole *fi. fa.* though they held it, intending to place it in the hands of the sheriff and claim the proceeds of the sale to be applied to both *fi. fas.* This was prevented for a time by one Todd, who was induced to advance the amount due on the Knott *fi. fa.*

and pay it off. Subsequently, in furtherance of their purpose, Winn and Thomson caused the Cole *fi. fa.* to be levied on lot 106, and the sale was arrested by a claim filed by complainants, yet pending. Thomas L. Wilcox was adjudicated bankrupt and discharged from his debts, and the property in controversy was duly set apart to him in April, 1874, as a homestead exemption under the act of Congress, and is for that reason protected from said levy. Lot 109 was not fairly or legally sold, because complicated with the rights of Nancy E. and her children, because of the bankruptcy proceedings, of the excessive amount of the Cole *fi. fa.*, and of the promise of the sheriff not to sell; and as against Winn and Thomson, complainants are entitled to have the same resold clear of doubt or encumbrances, if liable at all, and the proceeds applied to the *fi. fa.* They prayed that the sale be set aside as to lot 109; that the Cole *fi. fa.* be decreed to be valid for $150 only; that all the property be held exempt, under the bankruptcy and homestead laws, from said *fi. fa.*; that if this might not be done, the land be sold in parcels so that when enough was made to pay the Cole *fi. fa.* the balance would be preserved to complainants; that if this might not be done, Wilcox be decreed entitled to the old homestead of fifty acres for himself and five acres each to his minor children; that by a proper decree the same might be set aside out of the property to him and them; that defendants might be enjoined from prosecuting the claim case; and for general relief. At the March term, 1875, the bill was amended, and apparently Nancy E. Wilcox and her children made parties complainant; and complainants prayed, if the court permitted defendants to retain all or any part of lot 109, that a new division be made by the court, by its decree, of the remaining part of all the land between Thomas L. Wilcox and Mrs. Nancy E. Wilcox for herself and in behalf of her

children, Mary, Robert, Susan and Jackson, such as
should be fair and just, and the amount so set apart to
her and her said children be placed beyond the control
of Thomas L. or any of his creditors, and be vested in
her during her life for the use of herself and said chil-
dren, free from the debts or control of any future hus-
band, and after her death to go to said four children,
and such part to be in lieu of all claims for dower,
year's support, alimony or other claims of said Nancy
against Thomas L. or his property. On March 25,
1875, Winn and Thomson answered, in brief: They
knew nothing about the consideration of the Cole debt
or the statement made to Wilcox, or the action of Cole's
attorneys. The Cole *fi. fa.* was transferred to them for
valuable consideration, and with full knowledge of its
existence and amount on the part of Cole. They do
not believe there was any mistake on the part of Wil-
cox, but if there were, it would not entitle complainants
to the relief sought. They are seeking to enforce the
Cole judgment, and have a right to do so. They deny
the statement claimed to have been made by the sheriff
as to the Knott *fi. fa.*, and deny that the levy of that *fi. fa.*
was excessive, the sheriff having in his hands older exe-
cutions amounting to over $1,200. The proceeds of the
sale were not credited on the Knott *fi. fa.*, but on the
Cole *fi. fa.* There was no correspondence with Cole or
intention to take unfair advantage of any of complain-
ants, and defendants are ready to settle with complain-
ants for the amount which appears to be due on the Cole
*fi. fa.* That *fi. fa.* was levied, but not for the purpose
charged, and was arrested by claims; but they deny the
grounds of the claims, and are entitled to have the *fi. fa.*
proceed for the full amount appearing on its face to be
due, regardless of any bankruptcy or homestead pro-
ceedings. Lot 109 was fairly and legally sold and
bought by them in good faith, under judgment upon a

contract older than the homestead or bankruptcy laws, or any pretended trust, or separate estate of complainants, or any of them, and the land now levied on is subject to the execution named. In view of the helpless condition of the female and minor complainants and as an act of charity to them, and with a view to a full adjustment of all differences and to fix the title to the property, they offer to surrender the Cole *fi. fa.* and all claims to the half of lot 109, provided the title to the other half of that lot be fixed in them, and all costs accruing in any way out of the litigation relevant to the property, be paid by complainants; and they consent that a decree be taken at the present term carrying into effect this proposition. As part of the record of the last mentioned bill and answer, plaintiffs put in evidence two letters. The first was dated March 22, 1875, signed by George Hillyer, addressed to Mrs. Nancy Wilcox, and stated: When the writer last saw her, the idea about settling her land matter was for Winn and Thomson to have the north half of lot 109, and she the south half for life with remainder to her children, Wilcox to have three quarters of lot 106 for life with remainder to his children by first wife, and the attorneys to have the other quarter of 106. Since, the proposition has been changed, so as to let her and children take the west half of 106 with buildings on it, remainder to her children, Wilcox and his children by his first wife to have the east half of lot 106 and the south quarter of 109, and the lawyers the southwest quarter of 109; this settlement to be final and in full of all her claims for dower, homestead and other marital rights in Wilcox's land. Mrs. Wilcox was asked to let the writer know what she thought of it, and to write on the back of the letter whether she consented for the settlement to be made as above, and have some neighbor witness her signature and send it to the writer. The other letter was ad-

dressed to Hillyer, signed by Mrs. Wilcox, her signature being witnessed by John F. Wallace, dated March 22, 1875, and stated: She would agree to the proposition for her and her children to take the west half of 106 with the buildings on it, provided it should be free from all debts, and that she might have the right to use it in any way beneficial to her family. This was the most inferior of the land, but as she had several children she would accept it on account of the buildings on it.

It further appears: By order of the court on March 26, 1875, on application of Mrs. Wilcox for herself, and as next friend for the minor children of herself and Thomas L. Wilcox, naming them, they were made parties plaintiff in the bill. During said March term a verdict and decree were rendered, that the title of defendants under the sheriff's sale to the north half of lot 109 be confirmed as against all the complainants; that the sheriff's sale of the south half of 109 and the purchase thereof by defendants be declared void, this verdict and decree to operate as a release and reconveyance by defendants of all their interest in that half; that the Cole judgment be decreed paid, and defendants enjoined from using it against complainants or others claiming under them, and its lien on any of lots 109 and 106 be declared released and discharged; that all right of complainants or either of them in any way be released, discharged and set aside as to the north half of 109 in favor of the title of defendants; that all divisions theretofore made among complainants concerning lots 109 and 106, be entirely set aside, and the following division made and decreed in lieu thereof: Mrs. Wilcox for herself and as next friend of her minor children, gives up and releases all interest in lot 109 and receives in lieu the west half of lot 106, including the improvements thereon, to vest in her and her four said children for their use during her life, and after her death to go in

remainder to said four children, free from the debts and control of Wilcox or any future husband she may have, in satisfaction of all right or claim which she and her children have or might thereafter have against Wilcox or his property. The east half of 106 and southeast quarter of 109 to vest in Wilcox for himself and his children by his first wife, with power to sell the same at public or private sale and apply the proceeds in repurchasing other property under similar trust, or to the education or other use of himself and said children, free from all claims on the part of Mrs. Wilcox and her four children. The expenses of the litigation and certain attorneys' fees mentioned, to be made out of the southwest quarter of lot 109, set apart to pay such fees and costs, for which purpose execution to issue against said quarter, and if anything remained out of its proceeds, after payment of costs and attorneys' fees, such remainder to be paid over to Wilcox.

Among other evidence introduced by defendant was the following : Transfer of the Knott *fi. fa.* and judgment to Robert Todd, August 3, 1874, signed L. J. Winn, plaintiff's attorney. Transfer of the same by Todd to John Neal and L. J. Winn, December 10, 1879. Transfer of the same by Winn and Neal to Clark Wilcox, March 1, 1880. The original suit by Knott against Wilcox on a note dated March 7, 1866, and judgment rendered thereon by default for $200 principal and $84.85 interest, March 29, 1872. Upon the *fi. fa.* were entries of no property, November 4, 1872; levy on lot 109, January 30, 1874; sale by the sheriff to Thomson and Winn for $95, and, after payment of costs, $68.37 credited to the Cole *fi. fa.*, April 7, 1874; and levy on lot 106 as the property of and then in possession of defendant, January 30, 1874. Defendant also introduced deed by the sheriff of DeKalb county to Clark Wilcox, dated March 2, 1880, reciting levy of the

Knott *fi. fa.* upon the land conveyed, and its public sale on the first Tuesday in March, 1880, and that Wilcox was the highest bidder at $500, and conveying lot 106. Also, copy of the record in the ordinary's office of Wilcox county (to which the Wilcoxes had removed from DeKalb county), in the matter of T. L. Wilcox, guardian of Mary, Robert, Susan and Jackson Wilcox, his minor children, containing: Letters of guardianship, November 5, 1877. Order of the ordinary at the March term, 1878, granting leave to the guardian to sell the interest of said minors in lot 106, their interest being the west half of said lot, reciting publication of notice of the guardian's application as required by law, and that no objections had been filed. Return made under oath of the guardian, December, 1878, of sale of the lot, March 5, 1878, for $500 cash. Annual return of the guardian, March, 1890, charging himself with the amount received from the sale of the west half of lot 106 to D. F. McCrimmon, $500; and credits to the guardian commencing in March, 1878, annually to July, 1883, of $100 per year for the support etc. of the minors, and accounting for the interest annually accruing upon the proceeds of the sale. At the April term, 1890, this return was allowed, approved and ratified, with the vouchers accompanying the same, by the ordinary. Order discharging the guardian at the July term, 1890, of the court of ordinary, stating that $500, the estate of the wards, had been expended, under the approval and order of the court, in the support etc. of the minors; that there was then nothing in the guardian's hands as such, and no necessity for continuing the guardianship. Defendant also introduced deed from Thomas L. Wilcox, guardian of Mary, Robert, Susan and Jackson Wilcox, to McCrimmon, made April 2, 1878, containing the usual recitals and conveying, in consideration of $200 "in hand paid," the western half

of lot 106, described as being the same property decreed to said children after the termination of the life-estate of the wife of said Wilcox, as appeared by decree of DeKalb superior court, March term, 1875, in the bill filed by Wilcox for himself *et al.* against Winn *et al.* Also, deed from Thomas L. Wilcox, Nancy E. Wilcox and McCrimmon to Clark Wilcox, dated April 3, 1878, reciting a consideration of $500, and conveying the west half of lot 106, east half of lot 106 and southeast quarter of lot 109; said Nancy E. conveying her life-interest in the west half of 106, McCrimmon conveying the interest in remainder which her minor children had under the decree, and Wilcox, by authority of the decree, conveying the east half of 106 and southeast quarter of 109, the decree being made part of the deed, and the conveyance being intended to operate as a separate conveyance by each of the parties of all right, title and interest to any and all of the property. Also, deed from Clark Wilcox to defendant Wallace, dated November 20, 1889, in consideration of $2,500, to the entire lot 106, being a warranty deed in the usual form. The deeds from the sheriff to Clark Wilcox, from T. L. Wilcox, guardian, to McCrimmon, and from Wilcox, his wife and McCrimmon to Clark Wilcox, were of record when the deed was made by Clark Wilcox to defendant.

The grounds of the motion for new trial referred to in the 2d, 3d, 6th, 7th and 9th head-notes, are: The court admitted the record of the suit, verdict and decree of Wilcox and his minor children against Winn and Thomson, over defendant's objection that it was a decree taken at the first term without the consent of the parties and without service having been perfected on all the parties thereto, and that it appeared upon the face of the record that Mary, Robert, Susan and Jackson Wilcox were made parties plaintiff in the case on the application of Mrs. Wilcox, wife of said Thomas L.,

and without service upon them. Also, the court admitted as part of said record the two letters mentioned, over objection that there was nothing in the record showing these letters to have had anything to do with the case, that there was no evidence showing that such letters had ever been written, and that the facts therein recited were irrelevant. Also, the court allowed plaintiffs to prove by Clark Wilcox what he did with the $2,500 he got from defendant for the land sold him in 1889, and that he paid a portion of this money to his brother Thomas L. Wilcox, the objection being that this was irrelevant and could not affect defendant's title without notice thereof to him. Also, the court allowed plaintiffs to prove the value of the land in dispute in the year 1880, and to introduce the tax returns of Clark Wilcox and Thomas L. Wilcox from 1875 to 1881, valuing the land in dispute; the objection being that this evidence was irrelevant. Also, the court, over defendant's objection that the evidence was irrelevant, allowed plaintiff to prove the condition of the mind of Mrs. Nancy E. Wilcox from 1877 to 1889, and to introduce the testimony of one Clark, that he knew Mrs. Nancy E. Wilcox in her lifetime; knew her since 1877, and considered her insane since that time; saw her constantly until 1882; then he moved away and saw her but few times.

The other head-notes refer to exceptions to the following instructions in the charge of the court: " The plaintiffs must recover, by rules of law, upon the strength of their own title, and not upon the weakness of their adversary's title. Hence, to enable these plaintiffs to recover, they must show a superior title in this case to the one that is shown by the defendant. Their title must be stronger and better than his. I charge you that you shall begin your investigation as to the title to this land on the part of the plaintiffs, to the rights on the part of the plaintiffs, under the decree

rendered in 1875 upon a litigation between Thomas L. Wilcox and his wife and children and other children on the one part, and Lochlin J. Winn and William S. Thomson on the other part. Whatever rights are still in these plaintiffs by that decree is so much in their behalf, and you are to take that as established. For instance, if there is a decree which arises out of complications and litigations concerning this land that had taken place heretofore, and in the decree is contained that Mrs. Nancy Wilcox and her children by Thomas L. Wilcox shall have the west half of 106 as the finality of everything that had transpired before, why that would place, so far as that decree goes, the title in them. Now, beginning there, they must show that they had possession under that decree of this lot of land, this lady, the mother of these children, and the children with her. It appears, and is a conceded fact which I may state to you, that according to that decree the mother, Mrs. Nancy Wilcox, had a life-interest in this west half of 106 with remainder over to these children, and that Mrs. Nancy Wilcox is dead; which of course throws the remainder interest, the title in remainder, upon these children, and if their rights had not been—if there was nothing to legally interfere with their rights under it, they would of course have the right to have it adjudged that they are the owners of this lot of land, the west half of 106; that is to say, that they have got a paper title to it. That decree has the effect of a deed of putting the title in them to that lot. Well, but this is not sufficient for them to recover upon. They must show more than that in order to make out in law what we call a *prima facie* case, and to put it upon the defendant to show that he holds a better title than that that the plaintiff has shown. Well, it is a rule of law that if one has a deed to land and is in possession under that deed, he would have a right to recover in ejectment,

as against a person who has no better right. A deed
to land, and in this case a decree to land, defining the
boundaries of the land, and a possession under it, gives
a party a *prima facie* right to recover. The deed, or in
this case the decree, defines the boundary, and the pos-
session of any portion of the land where there is a deed
to it defining the boundary extends to the boundaries.
So, if you shall believe from the evidence that these
parties show this, that they have this right under this
decree and that their mother has been in possession of
that land upon that, then they would have the right to
recover if nothing better was shown. And in regard to
possession, as it affects this phase of the case and as it
may affect others about which I may charge you, they
are entitled to avail themselves of the possession of
Thomas L. Wilcox, if you believe from the evidence
that Thomas L. Wilcox was in possession of this land,
that it was a part of the land that originally came to
him in his name as trustee for his wife, and that in
this settlement he yielded up his claim to this portion
of land, having been once in possession of it. So
where it has been a possession which will create a pre-
scription or statutory right, or the mere possession
which will give one a status in court to recover against
a wrong-doer, they are entitled to have counted in their
behalf the possession of Thomas L. Wilcox, and also
the possession, as I said, in themselves. So, if you be-
lieve that under this decree these parties were in pos-
session under it, or Thomas L. Wilcox had been in
possession under whom they claim, and whose wife and
children they were, that would give them the right to
recover unless there was some better right shown on the
part of the defendant.

"The plaintiffs contend that they had the title, that
they had the possession for as much as four years, a
*bona fide* possession for value, adverse possession of four

years against this *fi. fa.* I charge you then, if the decree passes to these persons the title to this land, that they stand in the relation of purchasers. The law in regard to this is a statute of limitations as against judgments, to protect *bona fide* purchasers, who if they are in for as much as four years and are *bona fide* for value, why they are protected against the lien of the judgment. The lien of the judgment is destroyed thereby. The defendant says in regard to that point, the lien of the judgment, that there was a levy pending when they took this possession, and that therefore that is inoperative, that four years passes, because there was that levy. I charge you, upon the authority of our Supreme Court, that if a person makes a levy upon land, plaintiff in execution makes a levy upon land and delays to enforce that levy for as much as four years, against one who during that time is in possession, the parties are entitled to the same right as though there had not been any levy.

"Then the plaintiffs claim again, in respect to this deed which Mr. Clark Wilcox has under a guardian's sale, that that cannot avail the defendant because, according to the evidence as they claim, virtually Mr. Thomas L. Wilcox was a purchaser at his own guardian's sale. They claim that, according to the testimony of Mr. McCrimmon, he (McCrimmon) acted as the agent of the guardian, Mr. Thomas L. Wilcox, and that he made a deed to Clark Wilcox at the request of Mr. Thomas L. Wilcox, and that there was no money paid by him. That would not be operative against Mr. Wallace, the purchaser, unless he had knowledge of that, or notice of that which under the law will charge one with knowledge; and they claim that the orders and the deeds and the papers connected with it are sufficient to put Mr. Wallace upon notice, which would be equivalent to knowledge that that was the case, and therefore he

cannot rely upon that deed from McCrimmon as the original purchaser at the guardian's sale, to Mr. Clark Wilcox, and the deed of Mr. Clark Wilcox to Mr. Wallace. Then I charge you, if you shall believe from what you find in these deeds, and applying thereto the verbal evidence that is before you, that there is anything in it to put Mr. Wallace upon inquiry, then he would be charged with notice.

"And in respect to everything—in respect to all this, every phase of this case, so far as it is necessary to bring home notice to Mr. Wallace,—Mr. Wallace must have notice in order to affect him in regard to these deeds. To this branch of the case and to every other branch of the case it may be material, in order for you to come to a verdict, that I charge you, that he is charged with the recitations in the deeds and in the whole scope of the deed, and the decrees and everything of a paper kind which applies to the case that is sufficient to put Mr. Wallace upon notice, to put him upon inquiry, and in that way, if that is the case, then he would not be a *bona fide* purchaser without notice; but if there is nothing there to charge him with notice or knowledge so far as that is concerned, he would be protected in his purchase to the extent that it does not give the plaintiffs an exclusively legal right against him; and I charge you in regard to that, if you believe that this possession under this decree exists, why that would rise above all the notice to Mr. Wallace and would be effectual in favor of these plaintiffs, whether Mr. Wallace had notice or not.

"Another point in regard to notice that is claimed, and so I charge you, that if there is any connection with these deeds from the guardian under which it appears, and you are satisfied, that there was gross inadequacy of price, that would be another circumstance for you to consider as to whether you would bring home

notice to Mr. Wallace so as to put him upon inquiry; and if you find that, then he would not be a *bona fide* purchaser, an innocent purchaser. If you find it is not sufficient to bring it home, then he would be a *bona fide* purchaser without notice, and so far as this guardian's deed is concerned, the title that came to him under it doesn't charge him with notice, and the title was in Mr. Clark Wilcox, then he would be entitled to have you determine in his favor upon that point.

[Omitting the charge stated in the 13th head-note.]

" It is claimed by the defendant that Mr. Thomas L. Wilcox, the guardian of these children, got an order to sell and sold legally, and that it passed the title out of these children, I think I charged you that the plaintiffs claim here that Mr. Wilcox was the purchaser at his own sale; and if you believe that he was the purchaser at his own sale, why that sale would be void; that is to say, except as to somebody who purchases from him or from the person in whom the title was who had no notice ; and therefore you are to look to these papers, under the rules of law I give you in charge, to see whether it is sufficient to put defendant upon notice.

" There is another point that is made by the plaintiffs here. They say that the evidence—it is deducible from the evidence, inferable from the evidence, that this execution that sold this land and under which Mr. Wallace became the purchaser was really the property of the defendant in execution, Thomas L. Wilcox. Now, if you believe that there is sufficient evidence to enable you to believe that, why then they could not sell that to any one purchasing without that knowledge, so far as that is concerned; but in respect to that matter, why it is just like the matter of notice as I charged you in the other case. If you do not think there is sufficient in the case to charge Mr. Wallace with notice of that, why so far as that is concerned he would get a title."

CANDLER & THOMSON and JOHN L. HOPKINS & SONS, for
plaintiff in error.   GEORGE HILLYER, D. C. McLENNAN
and J. S. CANDLER, *contra*.