## BUNN, administrator, *v.* POSTELL.

1. The contract of an insane person who has never been adjudged insane by any tribunal of competent jurisdiction is voidable, after his death, at the option of his personal representatives.

2. When a person while insane has made a contract and shortly thereafter died, and when his estate has thereby realized property of value, the administrator of the estate, as the personal representative of the deceased, may ratify the contract, and if he does so, the estate is bound by the terms of the contract.

3. Such ratification may result not only from express agreement with the other contracting party but also from conduct of the administrator. If such conduct is such as clearly to indicate a purpose of ratification, and the property acquired by the deceased is kept by the administrator until it has depreciated to such an extent as to become worthless, the estate will be liable in a suit for the purchase-price originally agreed upon between the contracting parties.

4. Applying the above principles to the facts in this case, the evidence de-

manded a verdict for the plaintiff, and the court therefore did not err in instructing the jury to so find.

Argued March 27, — Decided May 29, 1899.

Complaint. Before Judge Janes. Polk superior court. February 26, 1898.

*Irwin & Bunn,* for plaintiff in error. *J. W. Harris, J. A. Blance, W. K. Fielder* and *King & Spalding,* contra.

, SIMMONS, C. J. From the record it appears that a certain mining company was incorporated in the State of Alabama. Stock was issued, of which West and Postell each owned a number of shares. West desired to purchase enough of the shares of the company to give him control thereof. Postell sold him certain shares and took his obligation to pay for the same at the price agreed upon. A few days after this trade was consummated, West died and Thompson was appointed his administrator. Thompson had the shares of stock owned by West's estate, including the shares purchased from Postell, transferred on the books of the company to him as administrator. He also attended meetings of the stockholders of the company and had himself made a director in the same by virtue of holding these shares as West's administrator. There was some correspondence between him as administrator and Postell, concerning the payment of the written obligation which West had signed for the price of the stock. In none of his letters to Postell prior to the latter's bringing suit did Thompson deny the validity of the contract, but on the contrary acknowledged its validity and made certain promises in regard to its payment. Finally Postell brought his action against the administrator, and at the first term the administrator filed an answer to the merits of the action, making, however, at that term, no attack on the validity of the contract on the ground of the insanity of his intestate. At a succeeding term he amended his answer by adding, in substance, that West, on account of mental incapacity, was unable to make a valid and binding contract. Thompson died before the trial of the case, and Bunn was appointed administrator de bonis non, and made a party in place of Thompson. At the trial, a large part of the evidence was devoted to an in-

vestigation of West's capacity or incapacity to make the contract sued upon. Postell also introduced evidence to show the ratification of the contract by Thompson, the first administrator. The judge directed a verdict in favor of the plaintiff, on the ground that Thompson had ratified the contract. Bunn made a motion for a new trial; the motion was overruled, and Bunn excepted. The principal questions argued here by counsel were, as to whether West had capacity to make the contract, and as to whether an administrator can ratify the contract, of his intestate, made while that intestate was non compos mentis.

1. The contract of an insane person or one non compos mentis, who has never been adjudicated to be insane or of unsound mind as prescribed by the code, is not absolutely void but only voidable. Hovey *v.* Hobson, 53 Me. 451, 89 Am. Dec. 705; Eaton *v.* Eaton, 37 N. J. L. 108; Boyer *v.* Berryman, 123 Ind. 451; Arnold *v.* Richmond Iron Works, 67 Mass. 434; Carrier *v.* Sears, 86 Mass. 336; Allis *v.* Billings, 6 Metc. 415; Clark, Cont. §§ 140, 141; Bishop, Cont. § 955 et seq.; 2 Beach, Cont. § 1388; 11 Am. & Eng. Enc. L. 133, 146 et seq. Such a contract may be ratified by him upon afterward becoming sane or during a lucid interval, or, after his death, may be avoided or ratified by his heirs or personal representative. In a case like the present the contract is voidable at the option of the personal representative. Clark, Cont. § 142; Bishop, Cont. § 974; 1 Story's Eq. Jur. § 225, and notes; Beverly's case, 4 Coke, 123 *b*; Hovey *v.* Hobson, supra; Schuff *v.* Ransom, 79 Ind. 458; Campbell *v.* Kuhn, 45 Mich. 513, 8 N. W. 523; Arnold *v.* Richmond Iron Works, supra; Carrier *v.* Sears, supra; Allis *v.* Billings, supra.

2. When an insane person enters into a contract while insane and under that contract property of value is realized by his estate, and his administrator takes possession of that property and keeps and uses it as the property of the estate, these acts of the administrator may amount to a ratification of the contract. The administrator certainly has the power, for the benefit of the estate, to ratify the contract, and if he does so by conduct or by express agreement, the estate will become bound thereby.

3. As before recited, the property bought under the contract upon which the present case is based was taken possession of by Thompson, the administrator. At that time it had a certain value in money. The administrator kept and used it as the property of the estate, had himself elected a director in the mining company, voted the stock and participated in the management of the company, treating the stock all the time as the property of the estate, and in his correspondence with Postell never suggesting or hinting that the contract was invalid or not binding upon the estate. No such defense was made in the first plea filed to the suit upon the contract. The letters themselves amount almost to an express ratification, and certainly his conduct was sufficient to show that he had determined to abide by the contract, and to claim for the estate any advantage or profit that might result from treating the contract as binding. Ratification in such a case need not be by express agreement, but may result from conduct as well.

4. We have carefully read the evidence in the record on the question of ratification, and think that it demanded a finding that there had been a ratification by the administrator of the contract made by his intestate. The letters written to Postell by the administrator, his keeping the stock and using it for the benefit of the estate, the fact that the stock had a value when bought and when taken possession of by the administrator, and that he retained it until it had become so depreciated in value as to be practically worthless, his failure to claim in his first plea that the contract was invalid because of the insanity of his intestate, and his conduct generally, were circumstances which demanded a finding that he had ratified the contract and determined to abide by it. After having done so, he can not subsequently elect to avoid the contract and treat it as invalid and not binding on the estate. We think, therefore, that the trial judge did not err in directing the jury to return a verdict in favor of the plaintiff and against the estate.

*Judgment affirmed. All the Justices concurring.*