## WARREN et al. v. FEDERAL LAND BANK OF COLUMBIA et al.

1. While failure to attach process is fatal to an action, the petition in the present case was not demurrable upon the ground that the plaintiffs had failed to pray for process. The petition stated that the defendant was a non-resident of this State, and the prayer that an order be granted providing for the service of the non-resident defendant by publication as provided by law was a sufficient substitute for a prayer for process, even were such prayer essential.

2. Realty descends directly to one's heirs, subject to be administered by a legal representative for the purpose of paying debts and distribution. But 'if there be no legal representative, the heirs of a deceased owner of realty may sue in their own name or pray for any relief necessary for the protection of their title.

3. The contract of an insane person who has never been adjudged insane

by any tribunal of competent jurisdiction is voidable after his death, at the instance of his heirs at law, if there be no legal representative of said insane person.

(a) The deed of an insane person, though made without fraud and for an adequate consideration, may be avoided by his heirs, not only as against his immediate grantee but also as against bona fide purchasers for value and without notice of such insanity. "The fairness of the defendant's conduct cannot supply the plaintiff's want of capacity." And "A person whose mind is so unsound as not to have capacity to contract is incapable of making a binding conveyance."

No. 3765. FEBRUARY 13, 1924. REHEARING DENIED MARCH 1, 1924.

Equitable petition; intervention.    Before Judge Hardeman. Emanuel superior court.    April 13, 1923.

Mrs. H. J. Warren and her children, being the only heirs at law of S. I. Warren, deceased, filed a petition against Cole B. Sutton, a resident of the State of North Carolina. The petition alleges, that the deceased was found to be insane on January 20, 1919; that he continued in this condition until September 30, 1919, when he died; that during the entire period he was suffering from arthritis deformiums and dementia; that at no time was he capable of making a contract of any kind; that on April 15, 1919, Cole B. Sutton obtained a bond for title covering all the real and personal property of S. I. Warren, which bond recited the payment of $50 in hand paid, with deferred payments of $1500 on May 10, 1919, $1450 on October 1, 1919, $1000 on October 1, 1920, and the remainder of $1000 on October 1, 1921; that "on the 26th day of June, 1919, the defendant, although no part of the consideration named in the writing described in the fifth paragraph had been paid, obtained an instrument of writing purporting to be a warranty deed to all the property, both real and personal, of the said S. I. Warren," as appears from the description of the deed copied in the petition and attached thereto as an exhibit; and that both the bond for title and the deed are void, for the reason that the grantor was, by reason of his insanity at the time they were executed, incapable of executing them. The prayers of the petition were: (a) "For an order providing for service of the nonresident defendant by publication as provided by law; requiring him to be and appear at the next term of this court to answer plaintiff's petition. (b) That the said bond for titles and the said deed be by the decree of this court canceled as a cloud upon the plaintiff's title to said property." By amendment the plaintiffs

30

added a paragraph setting up that S. I. Warren during his life, and the petitioners since his death, have been in continuous possession of the land described in the deed. On April 11, 1922, the judge issued an order in the usual form, ordering that service be perfected on the defendant, Cole B. Sutton, by publication. On the same day process was attached to the petition by the clerk of the superior court. On July 10, 1922, an order was passed by the court, declaring that service by publication had been perfected. On July 8, 1922, the Federal Land Bank of Columbia filed a petition to be allowed to intervene in the case, on the ground that this corporation had made a loan of $2100 to Cole B. Sutton upon the same tract of land as described in the deed which the petitioners were seeking to cancel. The intervention was allowed by the court, and this corporation at that time filed an answer, which was subsequently amended on April 13, 1923.

The intervenor moved orally to dismiss the petition of the plaintiffs, on three grounds: "(a) Because the parties plaintiff in said cause have no right to recover under the allegations set forth, the right to avoid the conveyance attacked being only in the personal representative of the deceased, S. I. Warren. (b) Because nowhere in plaintiffs' petition does it appear that the Federal Land Bank of Columbia is charged with notice of the alleged mental incapacity of the deceased grantor. (c) Because plaintiffs failed to pray for process."

The motion was sustained and the petition was dismissed, and exception was taken to this ruling.

*T. N. Brown,* for plaintiffs.    *A. S. Bradley,* for defendants.

RUSSELL, C. J. (After stating the foregoing facts.) We think the learned trial judge erred in dismissing the petition. In our opinion, none of the grounds of the motion presented a valid objection to the action.

1. We shall consider the last ground of the demurrer first, because process is jurisdictional, and failure to attach process is fatal to any action. The objection here raised is that the plaintiffs failed to *pray* for process. Without deciding whether it is necessary in any case that there should be a prayer for process, though usually such prayer is inserted in petitions, it is very easy to see that in this case there was a substantial substitute for such a prayer, if necessary. Section 5552 of the Civil Code makes it

the duty of the clerk to annex a process "to every petition" (and this was done in this case), and the form of process is defined in this section. In this case it is stated in the petition that the only defendant, Cole B. Sutton, is a non-resident of Georgia and a resident of the State of North Carolina. Personal service of process upon him then was impossible, and to meet the case of a non-resident the Code provides for service by publication. The petition prays for "an order providing for the service of the non-resident defendant by publication as provided by law;" and the prayer concludes in accordance with the provisions of § 5552, supra, "requiring him to be and appear at the next term of this court to answer plaintiff's petition." Considering that the only defendant is alleged to be a non-resident, and that a general prayer for process could not do more in the case of this particular defendant than was specifically asked to be done, we think that, even if a prayer for process was essential, there was substantial compliance with the requirement in the first prayer of the petition.

2. The first ground of the oral demurrer presents the contention that this action to cancel the deed of S. I. Warren can only be prosecuted by his personal representative, and that his heirs at law have no right to recover. Section 3929 of the Code of 1910 declares that "Upon the death of the owner of any estate in realty, which estate survives him, the title vests immediately in his heirs at law." § 3657, defining a fee-simple estate, such as is involved in the present case, declares: "An absolute or fee-simple estate is one in which the owner is entitled to the entire property, with unconditional power of disposition during his life, and descending to his heirs and legal representatives upon his death intestate. Realty descends directly to the heirs, subject to be administered by the legal representative, if there be one, for the payment of debts and the purposes of distribution. If there be a legal representative, the right to recover it is in him; if there be none, the heirs may sue in their own name." It is stated in the petition that there is no legal representative of S. I. Warren; and so it will be seen that the proposition urged by the Federal Land Bank is directly in conflict with the Code sections. It is well settled that the right to administer exists in creditors. They can apply for administration, and then there will be a legal representative "for the payment of debts and the purposes of distribution," but there

is no hint in the petition that there are any debts or that a sale of the property in question for purposes of distribution is necessary. Decisions cited by learned counsel for defendant in error in support of the proposition that the right to maintain the present action would rest only in the personal representative do not support his contention. These authorities are *Bunn* v. *Postell,* 107 *Ga.* 490 (2), 492 (33 S. E. 707); *Orr* v. *Equitable Mortgage Co.,* 107 *Ga.* 499 (33 S. E. 708); *Wallace* v. *Jones,* 93 *Ga.* 419 (10), 421 (21 S. E. 89). The tenth headnote in *Wallace* v. *Jones* rules nothing; it simply asks two questions without answering or deciding either, and the questions are still unanswered. The fact that in *Bunn* v. *Postell* and *Orr* v. *Equitable Mortgage Co.,* supra, the actions were brought by the personal representative is of no consequence; for the point here involved, to wit, that only the personal representative alone can maintain the action, was not considered or referred to. In these cases it was held that "The contract of an insane person who has never been adjudged insane by any tribunal of competent jurisdiction is voidable after his death, at the option of his personal representative," because it happened that in both cases the plaintiffs in error were personal representatives. It is not intimated in either of these decisions that the use of the term "personal representative," which was perfectly applicable to the facts then before the court, precluded the heirs at law from exercising a similar right where there was no personal representative and no necessity for one. Section 3929 of the Civil Code provides that "if there be a legal representative," the right to recover realty is in him; "but if there be none, the heirs may sue in their own names."

3. The second ground of the motion to dismiss raises the point that the plaintiffs cannot maintain their action after the allowance of the intervention, unless they allege and prove that the Federal Land Bank of Columbia had notice of the mental incapacity of the deceased grantor. It would seem that the lack of notice or knowledge on the part of the Federal Land Bank of Columbia, which intervened in this case of its own motion, would be so peculiarly defensive that it would devolve upon it to plead that defense. The action was not brought by the plaintiffs against the Federal Land Bank separately or jointly with Sutton. It was brought against Sutton alone, and as between the plaintiffs and Sutton the

dealings of Sutton with the Federal Land Bank were immaterial. However, considering the allegations of the petition as a whole, we are of the opinion that it was entirely unnecessary in this case for the petitioners to make any allegation upon the subject of notice. Section 4232 of the Code of 1910 expressly places insane persons in the same class as infants and drunkards. "The following persons cannot generally make a valid contract: Infants, insane persons, and drunkards." Section 4237 provides that "An insane person cannot contract prior to commission sued out and guardianship appointed." As held long ago in the leading case of Hovey v. Hobson, 53 Maine, 451 (89 Am. D. 705), "The deed of an insane person, though made without fraud and for adequate consideration, if never ratified or affirmed, may be avoided by his heirs, not only as against his immediate grantee, but also as against bona fide purchasers for value and without notice from such grantee." Mr. Chief Justice Appleton, in delivering the opinion of the court, said: "It is insisted, even if the deed of Neal might have been avoided as between the original grantor and grantee, that this right of avoidance ceases when the title has passed into the hands of third persons in good faith for an adequate consideration, and ignorant of any facts tending to impeach such title. It is apparent that the protection of the insane and the idiotic will be materially diminished if the heirs cannot follow the property conveyed, but are limited in their right of avoidance to the immediate grantee of such insane or idiotic person. The acts of lunatics and infants are treated as analogous, and subject to the same rules: Key v. Davis, 1 Md. 32; Hume v. Burton, 1 Ridg. Pl. 77. 'The grants of infants and persons non compos are parallel both in law and reason': Thompson v. Leach, 3 Mod. 310."

In Chew v. Bank of Baltimore, 14 Md. 318, Tuck, J., observed: "There are many cases in England to show that such persons [insane] are held by their contracts unless fraud and imposition have been practiced, but to this we cannot assent. The doctrine in this country is the other way, and, as we think, is sustained by better reasoning than the English rule as announced in some of their decisions. The effect in many cases would be to place lunatics on the same footing with persons of sound mind, with less effective means to protect the injured party against the fraud; for, at law as well as in equity, fraud and imposition may be relied on without refer-

ence to the mental capacity of the parties, except so far as such defects may give weight to other facts from which the fraud might be deduced." To the same effect is the decision of the Supreme Court of Massachusetts in Seaver v. Phelps, 11 Pick. 304 (22 Am. D. 372), in which Mr. Justice Wilde, delivering the opinion of the court, held that "Ignorance of the insanity of one with whom a contract is made is no defense to the recovery of the subject-matter of the contract," and sententiously remarked that "the fairness of the defendant's conduct cannot supply the plaintiff's want of capacity," saying further, "It is well settled that the conveyances of a non compos are voidable, and may be avoided by the writ dum fuit non compos mentis."

It must be admitted that some respectable authorities differ with the view of the Supreme Courts of Maine and Massachusetts, to which we have just referred only because of their apt expression and because they coincide with the views of this court. In Woolley v. Gaines, 114 Ga. 122 (39 S. E. 892, 88 Am. St. R. 22), this court unanimously decided that "Ignorance by one party to an alleged contract of the fact that the other party was insane at the time of its execution does not per se entitle the former to enforce it against the latter." In this case the trial judge charged the jury that if Sarah Woolley "was mentally incapacitated to make the deed, and Gaines and Lewis did not have knowledge of the fact and took the deed in good faith, then her mental incapacity would not warrant you in setting aside the deed, and you would sustain the deed notwithstanding her mental incapacity, if you find that they did not know or had no knowledge of the fact of her mental imbecility." Mr. Justice Lewis, delivering the opinion of the court, said: "The portion of the charge of the court which we have quoted was plainly error. No question as to the knowledge or want of knowledge of the plaintiffs, or either of them, concerning the mental condition of Sarah Woolley, should have been injected into the case. 'A person whose mind is so unsound as not to have capacity to contract is . . incapable of making a binding conveyance. But the deed of one who has not been judicially declared insane is not wholly void; it conveys the seizin, and must therefore be avoided at the grantor's instance after restoration to reason, or at the instance of his heirs or legal representatives after his death.' 9 Am. & Eng. Enc. L. (2d ed.) 119. 'The contract of an insane

person who has never been adjudged insane by any tribunal of competent jurisdiction is voidable, after his death, at the option of his personal representatives.' *Bunn* v. *Postell,* 107 *Ga.* 490, and cases cited. And it is well established by the repeated rulings of this court, based upon sound authority, that ignorance by one party to a contract that the other party was insane when it was executed does not affect the validity of the instrument. . . Directly in point also is the case of *Orr* v. *Equitable Mortgage Co.,* 107 *Ga.* 499, where the following language is used: 'That the other party to the contract was ignorant that the person with whom he was dealing was in fact insane, and that the existence of such insanity could not have been discovered by an ordinarily reasonable and prudent person, does not make such a contract valid and binding, nor interfere with the right of the legal representative to set up, in defense to an action brought against him on the contract, the insanity of the decedent.' . . The rule is based upon the very excellent reason, as stated in Bishop on Contracts, § 970, that 'since insanity incapacitates one to make a contract, the mere fact of the other party's not knowing it does not render good what he was legally incompetent to do.' "

In *Boynton* v. *Reese,* 112 *Ga.* 354, 356 (37 S. E. 437), it was held that "A petition for the cancellation of an instrument purporting to be a deed, alleging that at the time of its execution the alleged maker was non compos mentis and totally incapable of contracting, is neither strengthened nor, as to the real gravamen thereof, materially affected by an additional allegation that the person named in the instrument as grantee procured its execution 'by false and fraudulent means and artful practices.' " The court ruled that "if in point of fact Charity Crawford, the grantor, was really non compos mentis and incapable of entering into a binding contract, it could not matter under what circumstances her signature to the conveyance was procured; . . if the deed executed by her was, for the reason just stated, inoperative, it could not be successfully relied on by the defendant as passing title into him, irrespective of the question whether he did or did not resort to fraudulent means and artful practices in order to induce her to sign it." In the *Boynton* case, as in the case at bar, the maker of the deed had died, and it was alleged, as in the case now before us, that she was non compos mentis "up to the time of her death,"

and as to this the court said: "Clearly, if her mental incapacity continued 'up to the time of her death,' as alleged, she could have not made any election either to stand by and acquiesce in her deed or repudiate it." In *American Trust & Bkg. Co.* v. *Boone,* 102 *Ga.* 202, 206 (29 S. E. 182, 40 L. R. A. 250, 66 Am. St. R. 167), this court held that "a contract by an insane person, whether executory or executed, is utterly void; and this too when there has been no judicial determination of the fact of insanity." In that case this court quoted approvingly from Judge Story as to the disability of insane persons to contract, as follows: "This disability flows from the most obvious principles of natural justice. Every contract presupposes that it is founded in the free and voluntary consent of each of the parties, upon a valuable consideration, and after a deliberate knowledge of its character and obligation. Neither of these predicaments can properly belong to a lunatic, an idiot, or other person non compos mentis, from age, or imbecility, or personal infirmity. Hence, it is a rule, not merely of municipal law, but of universal law, that the contracts of all such persons are utterly void. The Roman law in expressive terms adopted this doctrine, Furiosus nullum negotium gerere potest, quia non intelligit, quod agit." Story on Bills of Exchange, § 106. If, as held by this court in the *American Trust & Bkg. Co.* case, the contract of an insane person is utterly void, one who purchases from him obtains no title and therefore has no title to convey to a purchaser, no matter how innocent; and hence it was held in *Bryan* v. *Walton,* 14 *Ga.* 185 (12) that "If one, under a legal disability to dispose of his property, give it away to another, who sells to a third person without notice of the incapacity of the donor, the ignorance of the vendee will not protect his title." See also *Mc-Clure Realty Co.* v. *Eubanks,* 151 *Ga.* 763 (108 S. E. 204).

A purchaser in good faith from one who has no title, in ignorance of the rights of the true owner, obtains no title. *Compton* v. *Cassada,* 54 *Ga.* 74 (2). It is alleged in the petition that the father of the plaintiffs, and after his death the plaintiffs themselves and as his heirs, have held continuous possession. "Possession of land is notice of whatever right or title the occupant has." Civil Code of 1910, § 4528. It will be seen that the Federal Land Bank of Columbia by the exercise of ordinary diligence might have learned something to their profit by inquiring, before the loan was made,

as to the nature of the claim upon which the possession of the deceased grantor and his heirs was based. "It is incumbent upon one who purchases, or contracts for a lien on land, to inquire into the right of any person in possession thereof; and such possession charges the former with notice of whatever title or right the occupant really has in the premises." *Neal* v. *Jones,* 100 *Ga.* 765 (28 S. E. 427). But regardless of this, the petition is not demurrable because it failed to state that the Federal Land Bank of Columbia had notice of the insanity of Warren; because, if Warren was in fact insane at the time he executed the deed to Sutton, no title passed to Sutton and he could convey nothing to the Federal Land Bank of Columbia.

*Judgment reversed. All the Justices concur.*