## NEAL v. JONES.

1. It is incumbent upon one who purchases, or contracts for a.
lien on land, to inquire into the right of any person in posses-
sion thereof; and such possession charges the former with
notice of whatever title or right the occupant really has in the·
premises.

2. Hence, where on the trial of a claim case it appears that the.
plaintiff in fi. fa., to secure the payment of a loan made by him,
accepted a mortgage on a tract of land from one who appar--
ently held a regular chain of title, but who at the time of the·
execution of the mortgage was not in possession of the prem-
ises; and where it further appears that the claimant claimed.
under an unrecorded deed from the defendant in execution,
bearing date prior to the date on which the mortgage was exe--
cuted and conveying to her a life-estate in the land in dispute,
and that she was in the possession and occupancy of the prem-
ises at and anterior to the date of the mortgage, and indeed so
remained until the filing and trial of such claim: a verdict find-
ing the life-estate of the claimant in land not subject to the·
mortgage execution is in accord with the evidence and the.
law governing the case.

Argued April 13,—Decided May 5, 1896.

Levy and claim. Before Judge Reese. Warren supe--
rior court. October term, 1895.

An execution in favor of James L. Neal against James·
Norris, dated April 3, 1893, issuing upon the foreclosure·
of a mortgage dated March 29, 1893, was levied upon the·

land described in the mortgage, and Charity Jones interposed her claim to a life-estate in said property. The jury found the property not subject so far as the life-estate was concerned. Plaintiff moved for a new trial, on the grounds that the verdict was contrary to law and evidence; and the motion was overruled.

Upon the trial plaintiff introduced a deed from Charity Jones, as administratrix of James Jones, to James Norris, conveying the land in dispute, dated December 2, 1879, and recorded February 10, 1883; and a deed from James Norris to Charity Jones, dated April 12, 1883, conveying a life-estate in the land, subject to the mortgage before mentioned. The consideration recited in this deed was natural love and affection of the vendor for his sister the vendee, and to secure her a home for life. This deed was not recorded, but purported to be, and was signed, sealed and delivered in the presence of three witnesses, one of them being a justice of the peace.

The testimony for the claimant shows, that she is the widow of James Jones, and was the administratrix of his estate. She is in possession of the land, and has lived upon it since some time before 1879. On the day she made the deed as administratrix to Norris, he signed and delivered to her a deed conveying a life-estate in the land. Dr. Hubert wrote both the deeds, and he and Jerre Reese witnessed both of them that day. The deed of April 12, 1883, is not the deed executed by Norris at the time stated. Mrs. Seaborn Jones, a daughter-in-law of the claimant, testified that in 1883 Norris came to the claimant and got her two deeds, saying, "You have not had them recorded. I will take them and record them and bring them back." Witness does not know what deed it was, but it looked like the deed of April 12, 1883, shown to her by counsel. Seaborn Jones testified, that his mother sent him to plaintiff, sometime after they heard that Norris had mortgaged the property, with instruction to ask plaintiff not to loan Norris

.any more money on the land, as she had an interest in the property and did not want any further loans made on it. Plaintiff told witness that Norris had shown him the deed to the life-estate, and said that Norris said he got it from claimant, but that it was not recorded, and that Norris had promised him to destroy it, and he thought Norris was a man of his word. Jordan Norris testified, that after the date of the mortgage plaintiff told him he had been wanting the Jones place for some time, that he had made a loan on it to Norris, and that it would come in the market and he could buy it.

Plaintiff testified: I knew nothing about the interest of Mrs. Jones till some time after I made the loan to Mr. James Norris. Mr. Jordan M. Norris first mentioned the fact to me, that Mrs. Jones had a life-estate. I did not know it until then. I did not know it when I made the loan. James Norris brought to me the administratrix deed from Charity Jones, administratrix, properly recorded, and I examined the records and found nothing else against the land. Mr. James Norris told me at the time he got the loan that he had intended to give his sister a home for life on the property, but that Shields and others of Thomson had some fi. fas. against [her], and that he had never given her a lifetime deed but expected to do so. I was afterwards told by Mr. Seab. Jones that Mr. James Norris had deeded Mrs. Charity Jones a life-estate, and that she did not desire me to make any further loans upon it. I made no further loans upon it. I never told Mr. Lockett, Mr. Jordan Norris or any one else that I knew of Mrs. Charity Jones's interest in the property when I made the loan. I found the deed dated April 12th, 1883, among Mr. James Norris's papers some three weeks ago. Mr. Norris is dead.

*James Whitehead,* for plaintiff.
*H. T. Lewis* and *E. P. Davis,* contra.

LITTLE, Justice.

The evidence undoubtedly established the fact that on the day Mrs. Charity Jones, administratrix, made a deed to Norris (her brother), conveying to him the land involved in this case, which as administratrix of her deceased husband, under an order, she had legally sold, and he had purchased, Norris in turn executed a deed conveying to Mrs. Jones a life-estate in the same land. Prior to that sale Mrs. Jones was in possession as administratrix. After the execution of the respective deeds mentioned above, she retained possession of the land, and lived there uninterruptedly until the levy of the execution in favor of Neal. Neal contends that he made the loan in good faith to Norris, and without notice that Mrs. Jones claimed any interest in the property; that after he had notice from Mrs. Jones not to do so, he made no further loans on the faith of the property. He further contends that he extended credit to Norris on the faith of the property and without any notice that Mrs. Jones had a life-estate therein, and that therefore he is protected. We do not think that this contention is sound. If at the time Neal extended credit to Norris the latter had been in possession of the land and had exhibited to Neal a paper title, the law, as we understand it, is that he would have been thereby protected as against any secret equity which might have existed in favor of another person; but the fact that at the time Neal made the loan and received the mortgage from Norris, Mrs. Jones was in actual possession of the land, put upon Neal the duty to inquire into the right of such possession. The fact of possession cannot be disregarded with impunity by a party who acquires an interest in land by purchase. One person may have the right of possession and another the right of property, and it is by the union of the two that a perfect title is established. When therefore Neal found Mrs. Jones in possession of the land, the law charged him, by reason of such possession, with

notice of her title thereto (19 *Ga.* 337); and this possession was sufficient to have put Neal upon inquiry as to the character and extent of the claim of Mrs. Jones. 48 *Ga.* 585. In the case of *Franklin, Reid & Co.* v. *Newsom,* 53 *Ga.* 581, it is said that a purchaser of land is bound to inquire into the right of one in possession of the same and that such possession charges the purchaser with implied notice, and that this is a rule too firmly established to be denied. The same ruling was made in the cases of *Sewell* v. *Holland,* 61 *Ga.* 608; and in the case of *Finch* v. *Beal,* 68 *Ga.* 594, the doctrine is clearly stated that actual possession of land is notice to the world of the rights of the occupant therein, and one who buys while such actual possession continues is affected with notice. The compilers of the Code of 1895, from these and other authorities on the same subject, have added a section, not found in the Code of 1882, one sentence of which is: "Possession of land is notice of whatever right or title the occupant has." Civil Code, §3931.

Under the authorities, at the time he received the mortgage from Norris, Mrs. Jones being in possession of the land mortgaged, Neal was in law charged with notice of whatever title or right Mrs. Jones had to or in the same. It appears that such right and title was a life-estate in the land in dispute; and the jury having found such life-estate not subject to the mortgage fi. fa., the verdict is in accord with the law and evidence in the case, and therefore the court below committed no error in refusing to set the same aside and grant a new trial.

*Judgment affirmed. All the Justices concurring.*