YANCEY *et al. v.* MONTGOMERY & YOUNG *et al.*

No. 8163. JULY 25, 1931.

*W. L. Nix* and *O. A. Nix,* for plaintiffs.

*John I. Kelley* and *I. L. Oakes,* for defendants.

HILL, J. G. H. Yancey and others, as heirs at law of J. R. Yancey, brought complaint for recovery of land and for cancellation of certain deeds, against J. C. Yancey, one of the heirs at law of J. R. Yancey, and G. C. Montgomery and R. H. Young, alleging as follows: J. R. Yancey died in Gwinnett County in 1920, leaving a will which was duly probated, devising certain real property to his heirs and designating the tract each was to have. Each of the heirs went into possession of his tract of land. At the time of the death of J. R. Yancey he owed debts amounting approximately to $6,000, and his estate was not in condition to pay this indebtedness in cash. By mutual understanding and agreement all of the heirs at law of deceased procured an order from the court of ordinary for a sale of the property, with the understanding that J. C. Yancey would bid in the property and obtain a loan from the Federal Land Bank of Columbia, in the sum of $6,000, for the purpose of paying off the indebtedness. The sale was had as contemplated. J. C. Yancey was the purchaser. The loan was obtained from the bank, and a deed to secure debt was made, conveying the property described. It was understood between the heirs that J. C. Yancey would hold the property for the

benefit of all of the other heirs, who obligated themselves to contribute their pro rata share of the taxes, payment of the semiannual installments on the loan, etc. J. C. Yancey, without any authority to do so, sold the property to G. C. Montgomery and R. H. Young, making a fee-simple title thereto, and Montgomery and Young purchased the property with full knowledge of the facts and circumstances of the sale to J. C. Yancey and the loan deed by the Federal Land Bank.

The defendants answered, J. C. Yancey averred that the plaintiffs had failed and neglected to pay their respective shares of the taxes that had accrued against the property, and had failed, neglected, and refused to pay their respective shares of the installments that came due against the land; that he was personally unable to meet these payments, and, after repeated efforts to get the plaintiffs to make their contributions for these purposes, was forced to sell the land in order to get the taxes paid and the installments due the bank, which were signed by J. C. Yancey personally, he being solely liable to the bank for their payments; that he sold the land to the defendants, who assumed the loan in favor of the bank and the payment of all taxes against the property; and they purchased the property in good faith, relying upon the genuineness of the title, and without any knowledge of any claim by the plaintiffs or either of them.

The jury found in favor of the defendants, Montgomery and Young. The plaintiffs filed a motion for new trial, which was overruled, and they excepted.

■ Ground 4 of the motion for new trial is that the court charged the jury as follows: "And they further, Montgomery & Young, say in their answer that they bought the property in the utmost good faith and without any notice that these children have any rights in this property as against them; . . that in the utmost good faith they bought the property and agreed to assume the Federal Reserve Bank loan of six thousand dollars and also at the same time paid some back taxes," etc. Movants contend that said charge was error for the following reasons: (a) It amounted to an expression of opinion on the part of the court to the effect that defendants had used an extraordinary amount of good faith in the purchase of the property, in that the court used the word *utmost* in referring to the good faith of said defendants,

and repeated the same, all of which would cause the jury to believe that the court was of the opinion that defendants had used an unusual and extraordinary amount of precaution in purchasing said property. (b) By using the word *utmost* in said charge, and repeating the same, the court placed defendants in a position of using a greater amount of good faith than they themselves claimed in their plea, and placed the contentions of the defendants before the jury in a magnified and enlarged condition, the effect of which was to particularly stress their defense of good faith, all of which was very harmful to movant, and which was not supported by evidence. The use of the words "utmost good faith" instead of the words "good faith," did not render the charge erroneous.

◼ Ground 10 of the motion is that the court charged the jury as follows: "Now, on the subject of notice, whether they did or did not have notice, that is a jury question. Now the law provides, where a party is in possession of land, that is notice. And in this case you must determine from all the facts and circumstances, taking into consideration the relations of the parties to Carl Yancey, and you determine whether or not there was adverse possession, and whether or not these defendants, if they were in possession of the property, whether that possession was adverse as to the rights of Carl Yancey under the administrator's deed." Movants contend that this charge was error, for the following reasons: "The evidence disclosed on the trial of said case that certain of movants were in actual possession of their land at the time the same was bought by Montgomery & Young; that Carl Yancey, the person from whom said Montgomery & Young purchased, was not in possession of the same, or any part of it, he residing at the time on another farm some four or five miles away; that Montgomery & Young did not see the lands before they bought, and did not investigate to see who was in possession, or to find out any rights of any one who might be in possession. Nowhere did the court charge the jury that if any of plaintiffs (movants) were in possession it would be the duty of defendants to investigate and see under what right they claimed such possession. The court did charge the jury that it was their duty to investigate and see if any of these *defendants* were in possession, and, if so, whether that possession was adverse to the rights of Carl Yancey. This was error, as movants contend, for the reason that no adverse possession

could arise by reason of any possession held by the defendants. Adverse possession could arise by a possession held by movant as against that of defendant Carl Yancey, but nowhere did the court charge the jury on this question, and, as movants contend, the charge sought to be given was not supported by any evidence and was not adjusted to the evidence."

Movants contend that the court erred by using the words "these defendants," when he intended to say "these plaintiffs." The use of this language will not cause a reversal, as it was obviously a slip of the tongue on the part of the court. Besides, the court in his further charge on the point under consideration said: "It is a question for you to determine what was the character of possession, if any, of the plaintiffs, or either of the plaintiffs, at the time; and if it was in such possession, adverse possession, then it was their duty to look into and see the character of the possession; and if it was adverse, that would be notice." The Civil Code (1910), § 4528, provides that "Possession of land is notice of whatever right or title the occupant has." It is incumbent upon one who purchases or contracts for a lien on land to inquire into the right of any person in possession thereof. *Neal* v. *Jones,* 100 *Ga.* 765 (28 S. E. 427). And the possession must be present, visible, and open. *Wilkinson* v. *Dix,* 151 *Ga.* 605 (107 S. E. 844). On the trial of the case Lovic Yancey testified: "I am one of the children of J. R. Yancey, one of the heirs under his will. I was always ready to pay my part of the interest and taxes, except one time, and paid that time. The reason I refused one time was because J. C. would not give me a bond for title to the tract that I was in possession of. He refused to sign the bond, but I paid my part of the interest and taxes. I was ready and willing to pay my share of interest and taxes in November, 1926, when it came due. I did not refuse to do so. I talked to Carl about making a loan payment, and he said he didn't have the money to pay his and was not going to borrow it. I offered to loan him the money until next fall, taking his note for it, but he said he wasn't going to do it. I did not authorize him to sell the land to Montgomery and Young. I did not know it was going to be sold. I was over in the Stary lot one afternoon before it was sold, and Mr. Young and Mr. Montgomery was in a car; I won't say whether J. C. was in the car or not; they came along and stopped me in the road, and Carl

and them got out and was looking at something, and they told me what he was going to do. Mr. Montgomery and Mr. Young and Carl was present. Carl told me that he had brought these folks down there to look at the farm and he was talking about selling it; and I said: 'J. C., this farm is not yours to sell.' Mr. Montgomery and Mr. Young and J. C. Yancey were present. I was not talking direct to Mr. Montgomery and Mr. Young, but I told J. C. that that farm was not his to sell. I suppose they heard the conversation. I told J. C. he had better let this land go to the block; if you are not going to, let us do it like Mr. Ware said. Carl said he expected he would let these folks have it. He said, 'You had better see these folks and rent your land from them, provided I sell it to them;' and I told them then and there it was my land." Cross-examination: "No, sir, they were not there after they bought it; it was before. I didn't tell Carl in their presence I was glad he got out from under the load. No, sir, I didn't want to rent some of it. I told them I was going to cultivate my land. I exchanged land with them and paid them rent. I didn't rent some of this land in 1928. I exchanged land with Mr. Montgomery. Yes, I paid rent, I paid it to Mr. Montgomery or Mr. Young, one. No, sir, I didn't enter into a trade when they came down to rent some of it. I paid rent because it wasn't mine then. I had no title to it. I didn't do what I first told them, because I was at my row's end, because I was not in possession of it. He sold my right to Mr. Montgomery. I don't know how he sold my right." In view of this evidence and the authorities above cited, the charge of the court on the question of possession and of adverse possession was error requiring a new trial. The use of the words "these defendants," when the court intended to say "these plaintiffs," was obviously a slip of the tongue, and will probably not occur on another trial.

■ Ground 11 of the motion is as follows: "Because the court, upon the trial of said case, charged the jury as follows: 'Whatever equitable rights they have as against Carl Yancey, that is, if they complied with their contract, or offered to comply with it, they could enforce it against Carl Yancey.' Said charge is error, as movant contends, for the following reasons, to wit: In this part of the charge, as movants contend, the court for the first time charged upon the rights of plaintiffs in the event the jury should

find that they had offered to comply with their contract with Carl Yancey. This charge, however, is error, as movants contend, because in this part of the charge the court limited movants' right alone to recovery if the jury found that he had offered to comply with his contract to Carl Yancey. In other words, the effect of this charge was to tell the jury that if an offer had been made to Carl Yancey by movants to comply with their part of the contract, that would give them the right to recover against Carl Yancey, but not against Montgomery & Young. This charge was error for the reason that if movants had a right to recover against Carl Yancey by reason of an offer to comply with their part of the contract, they would have the same right to recover against Montgomery & Young by reason of an offer to comply with their contract with Carl Yancey, provided the jury believed there was notice on the part of said Montgomery & Young." In view of the general charge on this subject, the quoted excerpt will not require the grant of a new trial. The court was dealing, first, with the question of whether or not the plaintiffs were entitled to recover as against J. C. (Carl) Yancey; and immediately following that, he instructed the jury as to what was necessary to authorize a recovery against Montgomery & Young; and it will be observed that the defense of Montgomery & Young included not only the defense of J. C. Yancey, but they say that, they being innocent purchasers, they had no connection with J. C. Yancey. The court charged the jury: "If you find, after considering all that, they [Montgomery & Young] did have notice, and did have notice under the rules just given you in charge, then their rights to have this deed canceled would be the same as they have against Carl Yancey; provided you find under the rules given you in charge that they could compel Carl Yancey by specific performance to comply with his part of the contract, they having complied with theirs, or offered to comply with it. . . But if, under the rules stated and the testimony in this case, you should find they had notice and therefore are not bona fide purchasers, then you would be authorized to find that the deed made by Carl Yancey to these two defendants be ordered up and canceled." It will be observed from these portions of charge that the court did not restrict the right of the plaintiffs to recover against Carl Yancey merely, but expressly instructed the jury to the effect that if Montgomery & Young pur-

chased, the property with notice, they would be bound as effectively as Carl Yancey.

■ Ground 12 of the motion is as follows: "Because upon the trial of the case the court charged the jury as follows: 'If you find in favor of the plaintiffs against *all* of the defendants, the form of your verdict would be, "we, the jury, find in favor of the plaintiffs against the defendants," *naming all of the defendants,* "and we further find that the deed made March, 1927, be ordered up to be canceled."'" Said charge was error, as movant contends, for the following reasons, to wit: Nowhere in said charge did the court instruct the jury that they had a right to return a verdict against either Montgomery or Young without finding a verdict against both of them. This charge in effect told them that they must either find for both of them or against both of them. The court had previously charged them on their right to find for the plaintiffs against Carl Yancey, and the above charge in connection with the charge on their right to find against defendant Carl Yancey could have, and probably did, leave the jury under the impression that a verdict against one or either of the defendants Montgomery & Young could not be returned. This, as movant contends, was error for the reason that the jury could have returned a verdict against either one of the defendants, two of them or all of them." This contention is without merit.

■ The other charges complained of were not erroneous for any reason assigned.

■ As the case goes back for another trial, no opinion is expressed as to the sufficiency of the evidence to authorize the verdict. The court erred in refusing a new trial.

*Judgment reversed. All the Justices concur, except Gilbert, J., absent.*