## BUCHANAN *v.* BUCHANAN.

1. In a contest arising out of an application for letters of administration, between the brother of the decedent, as applicant, and a person claiming to be his wife, as caveatrix, but whose right to administer is attacked on the ground that the marriage is void because the decedent was insane at the time it was contracted, the caveatrix is a competent witness in her own favor to testify to any matters relevant and material to the issue.
2. In the present case the evidence demanded a finding that the decedent was sane at the time of his marriage, and the judge committed no error in directing the jury to find a verdict in favor of the caveatrix.
3. None of the errors complained of were of a character requiring the grant of a new trial, and the judge did not err in overruling the motion.

Argued October 19,—Decided November 27, 1897.

Application for administration — appeal. Before Judge Sheffield. Early superior court. April term, 1897.

*W. D. Kiddoo* and *R. H. Powell & Son*, for plaintiff in error. *W. C. Worrill, J. H. Guerry* and *W. A. Scott*, contra.

COBB, J. H. H. Buchanan died intestate. W. A. Buchanan, his brother, made application for letters of administration, upon the ground that he was one of the heirs at law of the deceased. To this application a caveat was filed by a person calling herself Ida Buchanan, in which it is alleged that she is the widow of the deceased, and as such is entitled to the administration; praying that letters of administration be issued to her instead of to the applicant. To this caveat the applicant filed a reply,

in which it is alleged that the caveatrix is not the widow of the intestate, that she has never been his wife, and that she is not in reality Ida Buchanan as she claims to be and calls herself, but is Ida K. Cook and is not entitled in any way to the administration, nor to be heard on the question of who should be appointed to administer on the estate. From the judgment of the ordinary in favor of the caveatrix the applicant entered an appeal to the superior court. Upon the trial of the appeal the applicant sought to establish that the intestate was insane at the time that the alleged marriage to the caveatrix was contracted. At the conclusion of the entire evidence the court directed the jury to find a verdict in favor of the caveatrix. A motion for a new trial was made and overruled, and the applicant excepted.

1. One of the grounds of the motion for a new trial was, that "the court erred in permitting the caveatrix to testify in her own favor as to the marriage contract between H. H. Buchanan and her, and as to the facts leading up thereto, over the objection of applicant that, H. H. Buchanan being dead and she being the other party to the contract, she was an incompetent witness to prove these things." This assignment raises the question as to whether the witness, under the circumstances named, was competent under the provisions of par. 1, § 5269 of the Civil Code, which declares that, "Where any suit is instituted or defended by a person insane at time of trial, or by an indorsee, assignee, transferee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person, as to transactions or communications with such insane or deceased person." An application for letters of administration upon the estate of a deceased person is not a suit instituted by the personal representative of such deceased person, and therefore does not come within the terms of the section quoted, so as to render the opposite party incompetent to testify in his own favor to any matters or things which are pertinent to the issue then on trial. *Gunn* v. *Pettygrew*, 93 *Ga.* 327.

2. There was much testimony offered by the applicant to establish his contention that the intestate was insane at the time

of his alleged marriage. It is neither necessary to a proper determination of this case, nor would it be profitable to those who may have occasion to use the rulings here made as a precedent in the future, to go through in detail the large mass of evidence which this record contains on the controlling issue which was for decision. We have patiently and carefully read the entire brief of the evidence contained in the record. The story that it contains is sad and pitiful. A young man of excellent reputation and fine business qualifications, temperate and sober, occupying a position of trust and responsibility with a large railway corporation, and of good social position, becomes enamored of a woman supposed by him to be his inferior in social standing. She is about his age, and a widow with several children. Assiduous attentions on his part, which are received by her with encouragement, finally result in criminal relations. The time comes when it is inevitable that exposure is at hand. The young man, formerly cheerful, buoyant and happy, becomes moody, despondent and miserable. Day by day the time approaches when he can no longer conceal that which he has kept a secret from his relatives and most intimate friends. The woman asserts her fidelity to him in the unlawful relations which have existed between them, and urges him to do that which will to some extent repair the wrong done to her. There may be some doubts in his mind about the truth of her statements. Can he comply with her wish and face the world? He resolves the doubt in her favor, and, controlled by what he believes to be a sense of justice, finally yields, and a lawful marriage ceremony is performed. He has done what he believed to be right. He feels that he will lose the respect and confidence of his associates, forfeit his social position, and bring upon himself the contempt of the world. Remorse and moral weakness, brought about by the consciousness of the depravity of his conduct prior to the marriage, seize upon him, and, depending upon human reason only to guide him, he resolves the difficulty by taking his own life the day following the marriage. If no sane man ever destroys himself, then insanity has been proved. Self-destruction is a circumstance tending to show mental disorder, but it is not

conclusive proof of its existence. If the circumstances other than the fact of suicide, relied on to show insanity in this case, were brought before this court to impeach a paper offered for probate as a will, or to set aside a deed, or to show that a person charged with crime was not responsible, there would be no hesitancy in rendering a judgment that such contention was not established. If the evidence other than that showing the manner of his death proves that this unfortunate man was insane, there would be no difficulty in proving any man insane, who in time of anxiety and distress gives way to the natural impulse to talk and from time to time, in an excited and incoherent way, divulges to those to whom he would freely talk the cause of his troubles, or in company of others with whom he is not so intimate lapses into silence, abstraction, and even moodiness. There being absolutely no evidence of insanity in this case, except the fact of self-destruction, and this alone not being sufficient, there was no error in directing the jury to find in favor of the caveatrix. If the jury had returned a verdict finding the issue in favor of the applicant, we would have been compelled, under the facts as they appear in the record presented to us, to have set it aside for want of evidence to support it.

3. The motion for a new trial contained twenty-five distinct grounds. A number of them assigned error upon the refusal to admit evidence offered by the applicant. If all of the evidence which was rejected had been admitted and become a part of the evidence in the case, it would not have been sufficient to require the judge to submit the question to the jury, and therefore it is not necessary to discuss in detail the assignments of error on the refusal to admit such testimony. Whether we view the case in the light of the brief of the evidence, or whether we view it in the light of such evidence together with the rejected evidence, the verdict in favor of the caveatrix was absolutely demanded, and none of the errors assigned in the motion for a new trial are sufficient to authorize us to reverse the judgment of the trial judge in overruling the motion.

*Judgment affirmed.    All the Justices concurring.*