### BOYNTON *v.* REESE.

1. A petition for the cancellation of an instrument purporting to be a deed, averring that at the time of its execution the alleged maker was non compos mentis and totally incapable of contracting, is neither strengthened nor, as to the real gravamen thereof, materially affected by an additional allegation that the person named in the instrument as grantee procured its execution "by false and fraudulent means and artful practices." While such an allegation may be open to the objection that it is irrelevant, it does not render the petition subject to a special demurrer calling upon the plaintiff to set forth the particular acts constituting the alleged fraud.
2. The doctrine that a deed obtained by fraud is not void ab initio, but only voidable at the election of the grantor, has no application in the trial of such a petition, brought after the grantor's death, wherein it is alleged that he was insane when the paper was executed and so remained until he died.
3. A grantee in a deed against whom a petition for the cancellation thereof is brought by an heir at law of the grantor is not, because of the fact that such grantor is dead, disqualified from testifying as to communications and transactions between the deceased and the witness leading up to the execution of the instrument.

Submitted November 10, — Decided November 29, 1900.

Equitable petition. Before Judge Butt. Muscogee superior court. May 4, 1900.

*A. A. Dozier* and *J. H. Martin,* for plaintiff in error.
*Cameron & Hargett,* contra.

LUMPKIN, P. J. The plaintiff below, Hamp Reese, filed an equitable petition in which he named Martin Boyington as defendant and in which he made the following allegations: Petitioner is the

sole heir at law of one Charity Crawford, who died solvent and intestate during the month of November, 1897. On the 11th day of that month she was, and for a long time previously had been, in possession in her own right and title of certain real estate described in a deed of conveyance attached as an exhibit to the petition. "For a long time prior to her death, the said Charity Crawford was aged and infirm, weak in body and mind, and as the fatal disease with which she was afflicted increased in severity, aided by advancing years, her physical strength and mental ability gave way, until on the 11th day of November, 1897, and for some time prior thereto, and up to the time of her death, the said Charity was non compos mentis, and was wholly incompetent, mentally, to make a good and valid contract, all of which was known to the said" defendant. Nevertheless, "the cunning and wily Martin Boyington, knowing the condition of the said Charity, as aforesaid, by false and fraudulent means and artful practices induced her, the said Charity, to execute" the deed above referred to, in which he was named as grantee. He is now in possession of the premises therein described, which "are of the value of five hundred dollars and of the rental value of five dollars per month," and "refuses to deliver said premises to your petitioner or pay him the profit thereof." The plaintiff prayed, among other things, that the deed from Charity Crawford to the defendant be delivered up and canceled, offering, in this connection, to repay to him the consideration given therefor, if he "really paid any consideration." There was also a prayer that "petitioner recover of the said Martin Boyington the premises aforesaid and the rental value of the same." The defendant filed a demurrer to the petition, but it was overruled by the court and the case proceeded to trial, resulting in a verdict and judgment adverse to him. He thereupon filed a motion for a new trial, which the court refused to grant. Not only in the plaintiff's petition but also in other portions of the record before us is the name of the party defendant stated to be "Boyington." On the other hand, process seems to have been directed to one "Martin Boynton," and under that name was the defendant's answer filed. He presented his demurrer, if the record before us speaks the truth, in the name of "Martin Boyington," adopted a similar spelling of his name when filing an amendment to his answer, as also when he filed exceptions pendente lite to the overruling of his demurrer; and,

after judgment was entered up against him as Martin Boyington, he presented a motion for a new trial in which he referred to himself as "the said Martin Boyington." Later, however, he sued out a bill of exceptions to this court in the name of "Boynton," and procured a certificate from the trial court verifying his statement that the case tried was one "between Hamp Reese, plaintiff, and Martin Boynton, defendant." How all these discrepancies arose we can only conjecture. As no point was raised here in regard to the matter, nor any suggestion made that the plaintiff in error was not the same person who figured as defendant in the court below, we shall undertake to deal with the case upon its merits, treating the inconsistency above referred to as immaterial and susceptible of explanation upon the theory that it merely affords an instance of the careless manner in which cases are sometimes conducted in the trial courts, as a result of which this court is frequently seriously embarrassed when undertaking to find out from the record brought here what really transpired on the trial.

1. As will have been perceived, the gravamen of the plaintiff's petition was that the deed under which the defendant asserted title to the premises in dispute was inoperative, for the reason that the grantor named therein was, at the time of its execution, non compos mentis and therefore "wholly incompetent, mentally, to make a good and valid contract," binding either upon herself or upon her heir at law. True, the plaintiff undertook to further allege that the defendant resorted to "false and fraudulent means and artful practices" in order to induce his grantor to execute this conveyance; but this allegation is properly to be considered as surplusage or as merely meaning that it was per se fraudulent to obtain a conveyance from a hopelessly insane person. In neither view does this allegation add anything to the strength of the plaintiff's case, or materially affect the character of his petition; for if in point of fact Charity Crawford, the grantor, was really non compos mentis and incapable of entering into a binding contract, it could not matter under what circumstances her signature to the conveyance was procured. That is to say, if the deed executed by her was, for the reason just stated, inoperative, it could not be successfully relied on by the defendant as passing title into him, irrespective of the question whether he did or did not resort to fraudulent means and artful practices in order to induce her to sign it. It follows that while

the defendant had the right, by proper demurrer, to call upon the plaintiff to strike from his petition the allegations of fraud above referred to as irrelevant, it was not erroneous for the court to over-rule a special demurrer offered by the defendant, based upon the theory that, as it was necessary for him to meet these allegations, he had a right to call upon the plaintiff to "set forth any facts, acts, word, or circumstances" relied on as constituting the fraud complained of.

2. The defendant also sought by his demurrer to invoke an ap-plication of the doctrine that a deed obtained by fraud is not void ab initio, but only voidable at the election of the grantor; and that if he, knowing of the fraud perpetrated upon him, took no steps during his lifetime to have the deed set aside, his privies in blood or estate, if not formal parties to the instrument, can not be heard to question its validity after his death. It is obvious, however, that this doctrine has no application to the facts of the case in hand, as set forth in the plaintiff's petition; for he distinctly alleged, not only that Charity Crawford was mentally incompetent to contract on the date she signed the deed, but also that "for sometime prior thereto, and up to the time of her death," she was non compos men-tis. Clearly, if her mental incapacity continued "up to the time of her death," as alleged, she could not have made any election either to stand by and acquiesce in her deed or to repudiate it either on the ground of fraud or because of her inability to contract at the time of its execution.

The foregoing disposes of the points made by the demurrer.

3. In his motion for a new trial, the defendant complains that the court erred in holding he was an incompetent witness because Charity Crawford was dead, and in thus cutting him off from testi-fying, as he offered to do, that she was of sound mind and perfectly competent to contract; that she sent for him shortly before the deed was executed, and herself proposed to make him a conveyance if he would agree to furnish her proper care and attention during her life; that he assented to this proposition, and the deed was drawn up accordingly by her lawyer, for whom she sent; and that the whole transaction was entirely free from fraud, etc., etc. Doubt-less the trial judge predicated this ruling upon section 5269 of the Civil Code, which declares, among other things, that "where any suit is instituted or defended by a person insane at time of trial,

. . or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person as to transactions or communications with such insane or deceased person." In a brief filed by counsel for the defendant in error, the statement is made that the ground upon which he insisted that the defendant below was an incompetent witness was, that the action was brought by "the personal representative of the other party to the cause of action, who was insane and deceased." In this connection the cases of *Johnson* v. *Champion*, 88 *Ga.* 527, and *Killian* v. *Banks*, 103 *Ga.* 245, were cited and relied upon to sustain the decision complained of by the plaintiff in error. In the first of these cases it was held that, in view of the act of December 12, 1882, a widow who under its provisions took possession of her deceased husband's estate without taking out letters of administration thereon was to be regarded as his " personal representative " within the meaning of the evidence act of 1889, the effect of the act of 1882 being to substitute such widow for a regularly appointed administrator. This ruling was followed in *Killian* v. *Banks*, the other case relied on. Neither of these decisions has, however, any bearing upon the case at bar. Reese, the plaintiff below, was the son of Charity Crawford, the deceased, and brought his action in his own right as her heir at law. He certainly did not undertake to represent her or her creditors, or predicate his alleged cause of action upon the theory that he had a right, as her "personal representative," to recover the premises in dispute for the benefit of her estate. As was pointed out in *Neely* v. *Carter*, 96 *Ga.* 204: " With the exception provided for by the act of December 12th, 1882," above referred to, "authorizing a wife who is the sole heir of her deceased husband to take possession of his estate, on certain conditions, without administration, an heir at law is not the 'personal representative' of his deceased ancestor. Therefore, where a suit is instituted or defended by an heir at law, the opposite party would not, under the above" quoted provisions of section 5269 of the Civil Code, "be excluded from testifying in his own favor as to transactions with the deceased ancestor, an inquiry into which was involved in the litigation." See, also, in this connection, *Flowers* v. *Flowers*, 92 *Ga.* 688; *Gunn* v. *Pettygrew*, 93 *Ga.* 327; *Thompson* v. *Cody*, 100 *Ga.* 771; *Heard* v. *Phillips*, 101 *Ga.* 691; *Elliott* v. *Keith*, 102 *Ga.* 117; *Buchanan*

v. *Buchanan*, 103 *Ga.* 90; *Cato* v. *Hunt*, ante, 139; *Austin* v. *Collier*, ante, 247. Our conclusion being that the plaintiff in error was a competent witness; and it appearing that his testimony, if allowed, would have had a material bearing upon the vital issue in the case, it follows that there should be another hearing in the court below. *Judgment reversed. All the Justices concurring.*