BRITTAIN BROTHERS COMPANY *v.* DAVIS *et al.*

2

*Barry Wright,* for plaintiff in error.

*Porter & Mebane* and *Maddox, Matthews & Owens,* contra.

Hines, J.   On March 18, 1927, William T. Davis filed against Brittain Brothers Company his petition in which he made these allegations:   On March 23, 1926, petitioner purchased from defendant a described tract of land for the sum of $2,000.   He paid $1,000 of the purchase-price, and executed his note for the balance. The defendant executed its bond for title, in which it agreed to make to him, on March 23, 1927, a good and sufficient title in fee simple to said land upon the payment of said note.   The defendant was represented in this transaction by its treasurer, A. A. Chapman, who represented to petitioner that the defendant had a good and merchantable title to said land.   Petitioner relied upon said representation as being true, and, acting thereon, bought said land from the defendant, believing that he was buying land to which the defendant had a good and merchantable title.   He did not know that this representation was not true.   About two weeks ago petitioner discovered that the defendant had title to only four sevenths undivided interest in said land.   If he had known that defendant had only such interest instead of an absolute and perfect title to all of the land, he would not have bought it and would not have paid defendant $1,000 on the purchase-price.   It will be impossible for the defendant to execute to him, on March 23, 1927, a good and valid title to said land in fee simple, for the reason aforesaid.   Petitioner is entitled to and hereby elects to rescind said contract.   The defendant is entitled to have deducted from the amount paid a fair and reasonable rental of its four sevenths interest in the land. Petitioner prays that the contract of sale be canceled, and that he have judgment for the $1,000 paid on the purchase-price of this land.   The defendant, on June 10, 1927, filed its answer in which it denied the material allegations of the petition.

On June 2, 1927, the petition was amended by the following allegations: About February, 1927, petitioner had made an abstract of the title to this land. He gave to Chapman, the agent and officer of defendant, a copy of this abstract, and informed him that said abstract revealed that the defendant did not have a good title to said property. He tendered to the defendant the bond for title which it had executed, and informed Chapman that he then and there was surrendering to defendant said premises, and that the same from that time on were subject to its orders. He demanded of the defendant, through its said agent, the return of said cash payment with interest. Chapman failed and refused to repay to petitioner said money, and failed and refused to accept said bond for title. Petitioner has not been in possession of said premises since. On December 10, 1908, J. N. Cheney by warranty deed conveyed said land to J. W. and J. C. Davis. J. W. Davis was the father of J. C. Davis and petitioner. J. W. Davis died on February 24, 1920, without leaving a will. At the date of the death of J. W. Davis, he was seized and possessed of a half undivided interest in said land. There has been no administration of his estate. His half interest in the land descended to his heirs. On February 3, 1926, J. C. Davis by warranty deed conveyed said land to the defendant, thus attempting to convey to it the interest of his deceased father therein. J. W. Davis left as his heirs his wife, Mary H. Davis, five named children, and petitioner. Each of said heirs owns one seventh undivided interest in the undivided half interest of said intestate. When petitioner bought the land from defendant he did not know that his mother and sisters owned said interests. He did not know that he himself owned an interest in the land. He believed that his father's interest had been conveyed out of him. He believed and relied upon the representations of defendant's agent, Chapman, and the recitals in its bond for title. Otherwise he would not have bought said land and paid the defendant $1,000 on the purchase-price.

The defendant demurred to the petition, upon the ground that it set forth no cause of action. The judge overruled this demurrer. This court affirmed that judgment. *Brittain Bros. Co.* v. *Davis,* 167 *Ga.* 159 (144 S. E. 904).

On January 29, 1929, the plaintiff again amended and made these allegations: At the time he bought said land from the de-

fendant and received its bond for title, the defendant had no title to said property, for the reason that J. C. Davis, on January 26, 1923, had conveyed the land by his deed to the National City Bank of Rome to secure a debt due by him to that bank. Chapman, who represented the defendant in said trade, and who represented to petitioner that the defendant owned the legal title to said land and that there were no liens of any kind or nature against said property, knew, at the time of the trade with petitioner that J. C. Davis had conveyed all his title in said land to the bank, Chapman having witnessed the signature of J. C. Davis to said security deed. Said property has never been reconveyed to J. C. Davis nor conveyed to the defendant by the bank. Said deed from Davis to the bank has stood upon the records in Floyd superior court since January 26, 1923. Petitioner would not have bought said land and paid to the defendant the cash payment had he known that the title to said land was in said bank.

On January 29, 1929, the defendant amended its answer and prayed for judgment against the plaintiff upon his note for $1,000, with interest thereon from March 23, 1926. On the trial the judge directed a verdict in favor of the defendant. That judgment was reversed. *Davis* v. *Brittain Bros. Co.*, 168 *Ga.* 718 (148 S. E. 917).

On October 11, 1929, the defendant, by amendment of its answer, made these allegations: It has good and complete title to the land involved and is prepared to convey title thereto to the plaintiff. On or about September, 1909, J. W. and J. C. Davis purchased this property from Cheney. J. W. Davis invested no money therein. Having no money to invest in said property, J. W. Davis sold the same to J. C. Davis, making a verbal contract with the latter that he was to pay the entire purchase-price of said property. He placed J. C. Davis in possession of said land at the time, J. C. Davis agreeing to pay the entire purchase-price of said land represented by a mortgage of $2,200 to A. A. Chapman. J. C. Davis had previously paid all of the cash upon said property that had been paid to Cheney on the purchase-price. In pursuance of said agreement J. C. Davis entered into possession of said property, and made valuable improvements thereon, which are described in this amendment. J. C. Davis remained in the open, absolute, peaceable, and continuous possession of said land under the sale from J. W. Davis, paid the full purchase-price thereof, and by reason of said agree-

ment and payment he became vested with a perfect equity in the land. By reason of these facts, complete and absolute title to said land vested in J. C. Davis, and the land was his property on February 3, 1926, when he conveyed it to defendant. Mrs. Mary H. Davis, the wife of J. W. Davis, since the filing of this suit, died intestate, leaving six named heirs at law, including the petitioner. There has been no administration of her estate. Under the facts this defendant is entitled to a decree of specific performance, as against the heirs at law of J. W. Davis, to compel a conveyance of title by them to it, as the grantee of J. C. Davis, in accordance with the contract between J. C. Davis and J. W. Davis, in order to prevent a multiplicity of suits, and to do justice between the parties to this action. The balance of the purchase-money due by plaintiff on said lands is now past due, and defendant is entitled to judgment against the plaintiff for that balance, with interest from March 23, 1926. Defendant prayed that the heirs at law of J. W. Davis and of Mary H. Davis, deceased, be made parties defendant; and for decree of specific performance against the plaintiff.

Pearl, Mattie, Mamie, and Connie Davis filed an answer. They denied that the defendant had acquired the title to the half undivided interest of their deceased father in this land. They set up that each of them owned an undivided twelfth interest in said land, and prayed for decree accordingly. On the trial the judge directed the jury to find a special verdict in answer to the following questions: (1) Did J. C. Davis have an agreement with his father, J. W. Davis, that upon payment of the debts on this land, he could have the land? (2) Did J. C. Davis pay for the land? (3) Did J. C. Davis go into sole possession of the land under this agreement? (4) Did A. A. Chapman fraudulently represent to William T. Davis, before making the bond for title, that Brittain Brothers Company had a good title to the land? (5) Did William T. Davis promptly restore possession of the property to Brittain Brothers Company upon discovering the defective title, that is, if there was a defective title? (6) What was the rental value of the land during each year that William T. Davis held possession? (7) How many years did William T. Davis have possession?

The jury answered the first three questions in the negative. They answered questions 4 and 5 in the affirmative. In answer to the sixth question they found that the yearly rental value of the land

was $60. In answer to the seventh question they found that William T. Davis had possession of this land for one year. Thereupon the defendant moved for a new trial upon the general grounds and upon certain special grounds. The judge overruled the motion, and the defendant excepted.

■ The defendant in writing duly requested the court to charge the jury as follows: "I charge you that where a verbal contract for the purchase of land is made, and under such contract the purchaser enters into possession of said land and makes valuable improvements thereon, and fully performs the terms and obligations of the contract, and pays the full price therefor, such contract is binding upon the parties thereto and their heirs at law, and that the purchaser has in said property what is known under the law as a perfect equity in said property, which is the equivalent of a fee-simple title in the property; and that upon proper proceedings, to which proper parties are made, the purchaser under these is entitled to a decree of the court decreeing the fee-simple title to the property to be in him as against the other parties to the contract, or the heirs at law of such parties." The court refused to give in charge the principle embraced in this request, and to this ruling the defendant excepts in the first special ground of the motion for new trial. This request embodied a correct and applicable principle of law under the pleadings and evidence in this case. A parol contract for land, of which specific performance is sought, should be made out so clearly, strongly, and satisfactorily as to leave no reasonable doubt as to the agreement. *Beall* v. *Clark,* 71 *Ga.* 818; *Pair* v. *Pair,* 147 *Ga.* 754 (95 S. E. 295) ; *Gordon* v. *Spellman,* 148 *Ga.* 394 (96 S. E. 1006) ; *Allen* v. *Allen,* 151 *Ga.* 278 (106 S. E. 81) ; *Farr* v. *West,* 152 *Ga.* 595 (110 S. E. 724) ; *Ezell* v. *Mobley,* 160 *Ga.* 872 (129 S. E. 532) ; *Hattaway* v. *Dickens,* 163 *Ga.* 755 (137 S. E. 57).

It follows that the judge erred in refusing to give the instruction embraced in the request, unless it was covered by the general charge. But it is insisted by counsel for the plaintiff that this instruction was so covered by an instruction in the general charge, as follows: "In determining whether or not any such verbal agreement was made between J. W. Davis and J. C. Davis, I charge you that you should consider all the facts and circumstances appearing from the evidence, and that the burden is on the defendant, Brittain Brothers

Company, to prove that such agreement was made, and to establish the same so strongly, clearly, and satisfactorily as to leave no reasonable doubt that such an agreement was made. I charge you, gentlemen, that this rule of law only applies in so far as your answer to question number two is concerned." This contention of counsel for the plaintiff is not well taken, for the reason that the instruction, which they insist covers the principle embraced in the request which the court declined to give to the jury, expressly and by its terms confined it to the determination of the second question propounded by the court, and excluded from the consideration of the jury this principle in answering the first question propounded. The crux of this case is whether the parol contract sought to be specifically enforced by the defendant was made. It was incumbent upon the defendant to establish this contract so clearly, strongly, and satisfactorily as to leave no reasonable doubt as to the agreement. This principle was especially applicable in determining whether the parol contract sought to be established by this defendant was made between J. C. Davis and his deceased father. The instruction of the court expressly excluded from the jury the above principle, by telling them that it applied only to the payment which was to be made upon this parol contract. The trial judge should have clearly instructed the jury that it applied in determining whether the parol contract was made and in making their answer to the first question propounded to them. So we are of the opinion that the judge erred in not giving to the jury the principle embraced in the request to charge preferred by the defendant, and in limiting this principle to the question whether the payment required by the parol contract had been made.

■ In the second special ground of its motion for new trial this defendant excepts to the charge last quoted, upon the grounds that (a) it put on this defendant the burden of proving the fact of payment of the purchase-money so strongly, clearly, and satisfactorily as to leave no reasonable doubt; (b) this rule does not apply to the payments under a parol contract for the purchase of land; and (c) it could not be understood by the jury, because the court in his general charge had instructed the jury that "The burden is upon the plaintiff to establish each and every material allegation in his petition by a preponderance of the evidence, except as I will hereinafter note, in reference to the question which you will have

to answer, about which I will hereinafter instruct you." We do not think that the instruction was correct. While a parol contract for the sale of land must be proved so strongly, clearly, and satisfactorily as to leave no reasonable doubt that such contract was made, this strength of proof is not required to establish payments under a parol contract so proved. The burden of proving payments under a parol contract so established is carried when the party pleading the payment does so by a preponderance of the evidence. The other exception to this instruction is not well taken. Movant does not except to this charge upon the ground that it limits the principle announced in this instruction to payments under a parol contract for the purchase of land, and excludes this principle when the question relates to the existence of a parol contract. If this exception has been made, it would have been well taken, as we have seen above.

■ Movant in the third special ground of its motion for new trial contends that the answer to question two was without any evidence to support it. When the case was here before, this same contention was urged as a reason why the trial judge properly directed a verdict for the defendant. This court then held that the court erred in directing that verdict. This settled this contention against the movant. On the last trial the evidence on this point was substantially the same as it was on the first trial. It follows that this contention is not now well founded, and that a new trial should not be granted for this reason.

■ The court charged the jury as follows: "I charge you, gentlemen, as to question four—as to what is meant by fraudulent representations, or fraud, I give you in charge the following, under section 4622 of the Civil Code: Fraud may be actual or constructive. Actual fraud consists in any kind of artifice by which another is deceived. Constructive fraud consists in any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another. The former implies moral guilt; the latter may be consistent with innocence. I charge you that under section 4624 of the Code suppression of a fact material to be known, and which the party is under an obligation to communicate, constitutes fraud. The obligation to communicate may arise from the particular circumstances of the case. I charge you

that fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence. I charge you that misrepresentation as to a material fact, made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitutes legal fraud." The fourth special ground of the motion for new trial recites that the court gave to the jury these rules on fraud in immediate connection with each other, and without application at the time to any issues of fact, except that he said that these rules were given "as to question four." Afterwards, in charging on question four, the court instructed the jury, without making any further application of these rules, in the following words: "The fourth question—and the rules just read to you, gentlemen, would apply to this fourth question—did A. A. Chapman fraudulently represent to William Davis, before making the bond for title, that Brittain Brothers Company had a good title to the land? That question must also be answered yes or no." Movant insists that the court erred in instructing the jury on the question of fraud at all, for the reason that there could be no rescission of the contract for fraud, because the evidence was undisputed that plaintiff had never surrendered possession of the land. The court did not err, for the reason alleged, in giving these instructions. This same contention (that it was undisputed that plaintiff had never surrendered possession of the land) was urged when the case was here before, to uphold the direction of the verdict for the defendant. Our judgment reversing that direction, on this and other grounds, now concludes the movant from again urging this contention. Besides, there was evidence tending to establish the contrary of what movant contends upon this subject.

In dealing with question five the court charged the jury as follows: "I charge you that if he offered to restore possession of this property to Brittain Brothers Company, and that their duly authorized agent refused to accept the same, and told William T. Davis that he could not accept possession of the same; if you should find that to be true, although you might find that he remained in possession, if you find that to be true, then question number five should be answered in the affirmative." Movant insists in the fifth special ground of the motion for new trial that the court erred in

giving this instruction, because (a) it applies to tenders of personal property capable of manual delivery, and (b) that this was a case of rescission of a contract, and plaintiff could not recover unless he could and actually did restore the status. The errors assigned to this instruction are without merit.

The judge gave to the jury the instruction last quoted, with this addition: "If you find that he notified the duly authorized agent of the defendant in this case that he was returning the property to them, and vacated the property, and thereafter did not exercise any right of ownership or possession thereto, if you find those facts to be true, then, gentlemen, you should answer that question in the affirmative, that is, yes. On the other hand, if you find that he made no effort to restore possession to Brittain Brothers Company, or if you find that he did, but thereafter remained in possession, either by himself or through a tenant, and that the tenant was responsible to him, that is, William T. Davis, then, and in the event you find either of these facts to be true, it would be your duty to answer that question in the negative, that is, no." Movant insists that the judge made this charge unintelligible to the jury, because he first charged that if the plaintiff offered to surrender possession, and this offer was refused, they should answer this question in the affirmative, although they found that he afterwards remained in possession, and in the latter part of his charge he instructed the jury that if they found that he offered to surrender possession and afterwards remained in possession, they should answer the question in the negative. We do not think that this criticism of the instruction is well founded.

■ After this suit was brought it was changed, at the instance of the defendant and by amendment of its answer (in which all the heirs of J. W. Davis, deceased, were made parties defendant, and who in answer to said amendment set up their title as heirs at law to undivided interests in this land), from one strictly for rescission to one for the adjudication of the rights and title of all the parties in and to this land. In view of this radical change in the nature of the suit, we do not feel inclined to grant a new trial upon the ground of errors in the charge of the court, if there were any, upon the necessity of restoration of the premises in order to entitle the plaintiff to rescission, and of lack of evidence showing restoration or offer of restoration of the premises by the plaintiff before this

suit was brought. In the defendant's amendment of October 11, 1929, it is alleged that it had a good and complete title to the land involved, and that it was prepared to convey title thereto to the plaintiff. It then alleges facts to show that it had such good and complete title. In this amendment the defendant sought to make the heirs at law of J. W. Davis, deceased, and of his deceased wife, parties defendant, which was done. It therein further alleged that under the facts set out in this amendment it was entitled to a decree of specific performance of the contract of purchase by J. C. Davis, as against the other heirs at law of J. W. Davis, deceased, including plaintiff, to compel a conveyance of title by them to it, as the grantee of J. C. Davis, in order to prevent a multiplicity of suits and to do justice between the parties to this action. In answer to this amendment the heirs at law of J. W. Davis, deceased, and of his wife, with the exception of the plaintiff and J. C. Davis, denied that the defendant had acquired the title to the one half undivided interest of their deceased father in this land. They set up that each of them owned an undivided twelfth interest in said land, and prayed decree accordingly. The defendant expressly asserted in this amendment that it was offered to prevent a multiplicity of suits, and to settle the rights and title of the parties to the suit in and to this land. Thus the character of the original suit was changed from one of rescission alone to one to determine the respective rights and title of the parties in and to this land. In view of this change in the status of the case, the feature of rescission alone was done away with. It would seem absurd to render a decree against the plaintiff in favor of the defendant for the balance of the purchase-money due on this land, if it should be found that the original defendant did not have title to the whole of this land. By this change of the character of the suit the real issue raised was the right and title of the respective parties in and to this land. This change was brought about at the instance of the defendant. In consequence of this radical change in the nature of the suit, it was no longer one merely of the right of the plaintiff to rescission. If on the final determination of this case it should be determined that the defendant, Brittain Brothers Company, had no title to the whole of this land, and that the plaintiff was induced to purchase the same by fraud perpetrated upon him by the defendant, it would be inequitable and unjust to render a decree requiring the plain-

tiff and the other heirs of J. W. Davis, deceased, and his deceased wife, to specifically perform the contract of purchase, as the defendant prays in this amendment to its answer. Plaintiff did not buy an undivided interest in this land. He bought the whole of it. If he can not get title from the seller to the whole of it, and this was due to fraud perpetrated upon him by the seller, he should not be required to keep the undivided interest to which this defendant had title and to pay therefor. On the contrary he should be entirely relieved from his contract of purchase, and awarded judgment for the amount paid by him on the purchase-money of this land, less any benefits received by him from this land during the time he was in possession.

It is strenuously urged by counsel for the plaintiff and the heirs at law of J. W. Davis, deceased, and .of the deceased wife of the latter, that the defendant, Brittain Brothers Company, was not entitled to any of the relief sought by it, for the reason that it did not show that it had title to the whole or any part of the undivided interest of J. W. Davis, deceased, in this land. The contention is that this defendant undertook to show such title by the testimony of J. C. Davis; that under section 5858 of the Civil Code of 1910 he was an incompetent witness to testify to the making of the parol contract between him and his father, by which he claimed title to his father's undivided interest in this land; and that his testimony was without probative value, and for this reason failed to establish the parol contract under which J. C. Davis claimed title to this land. No objection was urged upon the ground that this witness was incompetent to testify in behalf of the defendant as to the making of the parol contract between him and his father. If we concede that J. C. Davis was an incompetent witness to testify as to the existence of this parol contract, this would not rob his testimony of probative value. The testimony of an incompetent witness, if it is material, when received without objection, is of probative value, and will be considered and given such weight as the jury deems it is entitled to in view of his interest and other circumstances. *Berry* v. *Brunson,* 166 *Ga.* 523 (4) (143 S. E. 761). We do not mean to hold that J. C. Davis was an incompetent witness to testify as to the making of this parol contract between him and his father as to the purchase by him of this land from his father. This suit was not instituted or defended by an indorsee, assignee, transferee, or by the personal

representative of a deceased person. It is not contended that J. C. Davis was the personal representative of his father. He was not an indorsee, assignee, or transferee of his deceased father, within the meaning of the Code. *Boynton* v. *Reese,* 112 *Ga.* 354 (37 S. E. 437); *Stewart* v. *Ellis,* 130 *Ga.* 685 (61 S. E. 597); *Rudulph* v. *Washington,* 146 *Ga.* 605 (91 S. E. 560); *Hall* v. *Buller,* 148 *Ga.* 812 (98 S. E. 549); *Cooper* v. *Johnson,* 151 *Ga.* 608 (107 S. E. 849); *Donald* v. *Groves,* 160 *Ga.* 163 (126 S. E. 583). If he had been the personal representative, the indorsee, the assignee, or the transferee of his father, the suit was not instituted or defended by him. It follows that this contention is unsound; and that J. C. Davis was a competent witness to testify in behalf of the defendant as to the parol contract between him and his father, under which he claims to have acquired title to this land.

We grant a new trial in this case, upon the grounds that the trial judge erred in not giving in charge the principle embraced in the request preferred by the defendant, and dealt with in the first division of this opinion, and in limiting the instruction dealt with in subdivision (*c*) of that division to the issue of payment of the purchase-money, and in making this instruction applicable at all to such payment. *Judgment reversed. All the Justices concur.*