JENKINS *v.* ELLIOTT *et al.*

304

No. 10277.  February 15, 1935.

*McElreath & Scott,* for plaintiff.   *B. H. Burgess,* for defendants.

Russell, Chief Justice.   Mrs. Jennie Jenkins as·an heir at law of Mrs. L. V. Stewart, deceased, filed a petition in the superior court against Coy H. Elliott individually, and D. P. Phillips as administrator of the estate of Mrs. Stewart, alleging that the defendant administrator was advertising for sale described realty of his intestate, subject to the liens of three security deeds, securing a note for $1500, dated January 1, 1923, besides interest, a note for $500 dated May 7, 1923, besides interest, and a note for $2000, besides interest, dated June 2, 1924, the $1500 and $500 deeds and notes having been executed by the deceased to Coy H. Elliott, and the $2000 note and deed having been made to one I. M. Starr and by him transferred to Elliott; that from 1923 to 1927 Elliott had collected the rents on said property and applied them to the payment of said notes, and that about September 1, 1927, said notes were paid in full.   The prayers of the petition were that the administrator be enjoined from selling the property until the issues raised by the petition are determined, and that Elliott be required to account for the money collected by him for the intestate, and that the three loan deeds be canceled.   The administrator in his answer stated that from information received by him, and based on his investigation, he believed the liens referred to in the petition were legal encumbrances against the property, but he prayed that "he

be discharged from this court, with direction as to how he should proceed as such administrator." Elliott in his answer denied that the debts secured by the loan deeds had been paid. The court granted a temporary restraining order as prayed, and upon the trial directed a verdict in favor of the defendants. The plaintiff made a motion for a new trial, which was amended by adding four additional grounds, and the motion as amended was overruled in the following order: "The within motion for a new trial, as amended, coming on for a hearing, and it appearing that there is no proof to sustain the allegations that said notes referred to have been satisfied, and it further appearing that there is no dispute between the parties, but that five hundred and no/100 ($500) dollars should be credited on the principal of said two thousand dollar note as of date of Sept. 1st, 1924, and that four hundred and fifty and no/100 ($450) dollars should be credited as interest on said loans, it is ordered that said motion for new trial, as amended, be and the same is hereby denied, and the administrator is hereby ordered to proceed with the sale of said property subject to said loans, and allowing credit" of the sums above stated. The plaintiff excepted to the overruling of the motion for new trial.

Plaintiff introduced a bank book showing that Mrs. Stewart had deposited $1480.17 in the bank from August, 1927, to March, 1931. Mrs. Moore, a sister of the deceased, testified: "I handled the bank account. I kept a book at my house. I made the deposits, all but one time when I was on my vacation, and she asked my sister to do it. . . I have a receipt for $425. I paid that money to Coy Elliott for Mrs. Stewart. . . Coy did not say what the money was for. I think the check was dated in March, and she died June 7, 1931. . . Mr. Coy Elliott never said anything to me about some notes that he held against Mrs. Stewart." I. M. Starr testified that he sold the $2000 note and security deed executed to him by Mrs. Stewart to Coy Elliott for "about $1500," and that before then Mrs. Stewart had paid him four or five hundred dollars on it. Coy H. Elliott testified that he collected rent on the store of Mrs. Stewart, amounting to from $40 to $75 per month, and gave the money to her; also: "I never borrowed any money from Mrs. Stewart to buy cattle. She paid me some money for interest. She paid me $450. . . This loan that she got from I. M. Starr was $2000. I paid Mr. Starr $1500 on that

loan." Counsel for defendants stated in open court that the notes for $2000, $1500, and $500, referred to in the petition, had been destroyed by fire about two years before the death of Mrs. Stewart.

The first special ground of the motion for a new trial presents the contention that the court erred in directing the verdict, because there were issues of fact which should have been submitted to the jury. Grounds 2 and 3 complain of the refusal of the court to allow the plaintiff, Mrs. Jenkins, and another witness, plaintiff's sister, Mrs. Moore, to testify as to conversations with the intestate. This rejected testimony was to the effect that the $450 referred to by Coy H. Elliott was loaned to him by Mrs. Stewart for the purpose of being used by him in the purchase of cattle, and that Mrs. Stewart told both these witnesses about the time she opened her savings account in 1927 that she "did not owe anything." Counsel for defendants objected to this evidence, on the ground that it was a communication between witnesses and a deceased person, and the court sustained the objection and excluded the testimony. Ground 4 assigns error on the refusal of the court to allow a witness to answer the following question propounded by plaintiff's counsel: "If Coy Elliott had one note for $2000 and notes for $500 and $1500, signed by Mrs. L. V. Stewart, and all these notes were destroyed by fire about two years before the death of Mrs. Stewart, what in your opinion would he have done?" The objection was that the question was immaterial and irrelevant.

The trial now sub judice did not involve any issue except the state of the alleged indebtedness of the intestate to Coy H. Elliott, by reason of which the administrator was seeking to sell the property described, subject to the claims of Elliott. The administrator's advertisement of the sale nowhere states that the property is to be sold for the payment of debts, etc., as is usual in such cases, but specifically states that the property is sold subject to the securities held by Coy H. Elliott. From the advertisement an inference that there are no other debts due by the intestate would seem to be authorized. We have made this reference to this portion of the record to show that the administrator in this case is merely a nominal party, and therefore the statute (Code of 1910, § 5858) which forbids a party to testify as to communications and transactions with an intestate is not applicable in this suit, which is really an action between one of the heirs at law and an alleged creditor

of the deceased, in which the estate represented by the administrator will actually be benefited if the heir at law should succeed in sustaining her contention and showing that the intestate is not indebted as claimed by the defendant Elliott. There was no demurrer to the petition. Even if there had been, the Code of 1910, § 4596, provides that "Equity will not interfere with the regular administration of estates, except upon the application of the representative, either, first for construction and direction; second for marshaling the assets; or upon application of any person interested in the estate, where there is danger of loss or other injury to his interests." We are of the opinion that the petitioner, under the allegations in the petition, had the right to maintain this action. There being no contention to the contrary, we easily reach the controlling question in this case, which is, whether the judge erred in directing a verdict for the defendants. The verdict directed must be restricted to the heir at law and the defendant creditor only, because the administrator only prayed that he be directed by the court as to whether the creditor's claim has been paid or is still outstanding. The language of his prayer is: "Wherefore this defendant, having fully answered, prays that he be discharged from said court, with direction as to how he should proceed as such administrator." The administrator admits in his answer that he has been informed by the creditor that the said loan deeds were valid and binding encumbrances against said property, and he believes them to be such; but he does not admit that the claim is just, true, and unpaid, and he does not antagonize the prayer of the petitioner for an accounting, by which it may be ascertained whether the intestate is indebted, and, if so, in what amount.

In many cases the question whether a judge errs in directing a verdict is not confined to a review of the evidence admitted to the jury, but extends also to the merit of evidence which is excluded from consideration of the jury. In such cases the real question is, what should have been the verdict if the jury had been permitted to pass on the evidence excluded, together with that which was admitted. It would never do to hold that the court could properly direct a verdict merely because the remainder of the evidence, after the court by rulings upon evidence had subtracted material evidence, was insufficient to authorize any other verdict than that which the court directed. The jury may be authorized to raise a potential

inference from two circumstances, each of which illustrates the other, when, if one of these circumstances is lacking, the other becomes altogether impotent. For the reasons just stated, we shall deal first with the special grounds of the motion for new trial which complain of rulings upon the evidence. Grounds 2 and 3 complain of the exclusion of testimony of statements of the deceased made to the witnesses Mrs. Jennie Jenkins and Mrs. Vie E. Moore, the objection to said testimony being based upon the ground that it was a communication between the witnesses and the deceased person. In the circumstancs of this case, as we have already stated, the administrator is a mere nominal party, the only relief prayed as to him being that he be restrained from selling the property when and as advertised. Substantially the only relief sought by the plaintiff was against Coy H. Elliott, who was neither the administrator nor an heir at law; and therefore the rule ordinarily applying to the administrator as representative of the estate has no application in the issue involved in this case. Bearing in mind that the administrator is not the real defendant in this case, we are of the opinion that the declarations of the person deceased were admissible. They were admissible for the purpose of explaining conduct and ascertaining motives. The Code of 1910, § 5763, declares: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they are admitted in evidence, not as hearsay, but as original evidence." Also that "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, are admissible in evidence as part of res gestæ." § 5766. The declarations of Mrs. Stewart at the time of opening the bank account were admissible for the purpose of showing that she had no purpose in opening said bank account except that she was then free of debt, and that money which had been formerly allotted to Coy H. Elliott be accumulated as a saving. The same principle applies to the testimony of both Mrs. Jenkins and Mrs. Moore in regard to the $450 or $425 which Mrs. Stewart stated she advanced to Elliott with which to purchase cattle; and the plaintiff should have been permitted to show that this amount was not a payment to Elliott on any indebtedness, but was advanced by the deceased to Elliott for the purpose of buying cattle.

We think our holding upon the admissibility of this evidence is

in accord with the ruling in *Cohen* v. *Parish*, 105 *Ga.* 339, 350 (31 S. E. 205), where it was held that declarations of a party since deceased, made at the time of making a conveyance, were admissible where they tended to show good or bad faith in a transaction. Also it is in accord with the ruling in *Drawdy* v. *Hesters*, 130 *Ga.* 161 (60 S. E. 451, 15 L. R. A. (N. S.) 190), holding that statements of a person since deceased, relative to his marriage, were admissible in evidence to explain his motives and conduct. Both of these decisions were based on the principle set forth in *McLean* v. *Clark*, 47 *Ga.* 24 (2) : "Declarations of a vendor of property, as to his motives for the sale, made at the time and during the progress of the sale, and even so soon thereafter as to be free from all suspicion of afterthought, are admissible evidence on a trial as to the validity of the sale." We can not concur in the contention of the defendants, that, merely on account of the fact that the administrator is a party in this case, the testimony rejected was properly excluded under section 5858 supra; for, as already stated, we are of the opinion that Phillips, as administrator of the estate, was not really a party at interest, for the reason that at the time of the trial no relief was sought against him. Consequently this case should be construed, not as one between an heir at law and an administrator, but as a petition brought by an heir at law against a third party; and the rules of evidence applicable between an heir at law and a third party should be applied. In *Belcher* v. *Craine*, 135 *Ga.* 73 (5) (68 S. E. 839), it was held: "The court did not err in permitting the husband of the plaintiff, over the defendant's objections, to testify as follows: 'He [defendant's testator] came up after her [the plaintiff] a number of times and wanted her to move back in the house with him to help take care of him and wait on him, that he was feeble and could not take care of himself. He wanted her to move back over there and wait on him. I did not want her to go, but finally I consented for her to go. I moved back with her and helped her to look after her grandfather.' The objections urged against this testimony were, that the witness 'was the husband and entitled to the wife's services and was her agent, and would be interested in anything she might get for her service; . . that it was a transaction between him and her that would disqualify him, on the ground that [defendant's testator] is dead, and he could not testify in this case as to any transaction of [or] communication

with [the testator] and his wife and himself, and . . that he appeared to be acting as her agent.' " In *Boynton* v. *Reese,* 112 *Ga.* 354 (3) (37 S. E. 437), it was held: "A grantee in a deed against whom a petition for the cancellation thereof is brought by an heir at law of the grantor is not, because of the fact that such grantor is dead, disqualified from testifying as to communications and transactions between the deceased and the witness leading up to the execution of the instrument." In *Rudulph* v. *Washington,* 146 *Ga.* 605 (91 S. E. 560), this court held: "In an action for land instituted by A against the heirs at law of B, who died intestate, the heirs at law of B are not to be deemed the personal representatives of B, within the meaning of the Civil Code, § 5858, par. 1, and A is competent as a witness to testify in his own behalf as to conversations with B, affecting the merits of the case." In *Fleeman* v. *Gay,* 152 *Ga.* 189 (108 S. E. 781), it was held that in litigation between the surviving partner of a deceased and the deceased's heir at law, the partner was a competent witness. In *Neal* v. *Neal,* 153 *Ga.* 44 (2) (111 S. E. 387), this court held that the widow of the deceased could testify in a case by herself against the other heirs at law, as to declarations of the deceased tending to show that certain property delivered to some of the heirs was intended as an advancement. In *Donald* v. *Groves,* 160 *Ga.* 163 (126 S. E. 583), it was held that in litigation between the heirs at law of a deceased person both parties could testify as to transactions with the administrator.

From the above citations it will be observed that this court has held that heirs at law, not being legal representatives of the estate, could testify and be testified against as to communications with the deceased. From this it follows that the testimony which the court repulsed could be excluded only upon the ground that the administrator was indeed a party, and not merely made a party for the single and sole purpose of maintaining the status until the issue between the real parties could be determined. The excluded testimony was objected to upon the sole ground that it was evidence as to communications between the witnesses and a deceased person. The evidence was not subject to objection upon this ground. It may be that for other reasons, had they been given, this evidence should have been held to be inadmissible.

The court erred in directing a verdict, and in thereafter overruling the motion for a new trial.

*Judgment reversed. All the Justices concur.*

ATKINSON and GILBERT, JJ., concur in the result. HUTCHESON, J., disqualified.